553 A.2d 714

**Sigmund KASSAP**

v.

**Gregory SEITZ et al.**

**No. 36, Sept. Term, 1988.**

Court of Appeals of Maryland.

March 1, 1989.

156

D. Christopher Ohly (Arnold M. Weiner, Joseph S. Kaufman, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., Baltimore), for appellant.

Harlan I. Ettinger, Deputy Atty. Gen., Trenton, N.J., for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The question we are called upon to decide in the case before us is the proper allocation of the burden(s) of proof in a civil suit brought under the Electronic Surveillance Act; Maryland Code (1984 Repl.Vol., 1988 Cum.Supp.), Courts and Judicial Proceedings Article, §§ 10–401—10–414 [1] (the Act). In particular, we are presented with the question of which party carries the burden of persuading the trier of fact in regard to whether the interceptor was or was not acting under the direction and supervision of a Maryland investigative or law enforcement officer and was or was not gathering evidence about one of the listed criminal activities in compliance with § 10–402(c)(2).

## I.

The Maryland General Assembly adopted the Act in 1977. *See* Ch. 692, Acts of 1977. It is first and foremost a

---

1. Unless otherwise indicated all statutory citations herein are to Maryland Code (1984 Repl.Vol., 1988 Cum.Supp.), Courts and Judicial Proceedings Article. Although the Act has been substantively amended since the time applicable to this case, those changes do not affect the issues here involved.

criminal statute. Section 10–402 outlines what is "unlawful" and "lawful" under the Act and, in parts pertinent to our consideration here, reads:

(a) *Unlawful acts.*—Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

(1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(2) Wilfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle; or

(3) Wilfully use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle.

(b) *Penalty.*—Any person who violates subsection (a) of this section is guilty of a felony and is subject to imprisonment for not more than 5 years or a fine of not more than $10,000, or both.

(c) *Lawful acts.*—

\*　　\*　　\*　　\*　　\*　　\*

(2) It is lawful under this subtitle for an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication in order to provide evidence of the commission of the offenses of murder, kidnapping, gambling, robbery, any felony punishable under the "Arson and Burning" subheading of Article 27, bribery, extortion, or dealing in controlled dangerous substances, including violations of Article 27, § 286B or § 287A, or any conspiracy or solicitation to commit any of these offenses, or where any person has created a barricade situation and probable

cause exists for the investigative or law enforcement officer to believe a hostage or hostages may be involved, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception.

Section 10–410, which provides for civil liability as an additional enforcement mechanism, sets forth both the civil cause of action and an affirmative defense in the form of "good faith reliance on a court order or legislative authorization...." It reads:

(a) *Civil liability.*—Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the communications, and be entitled to recover from any person:

(1) Actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(2) Punitive damages; and

(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

(b) *Defense.*—A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this subtitle or under any other law.

## II.

Section 10–410(a) makes clear that in order for a plaintiff to maintain a civil action the defendant must have acted "in violation" of the Act. The focal issue at trial in this case was whether the conduct of defendants-appellees, Gregory Seitz (Seitz) and William Kisby (Kisby), came, in fact, within the scope of § 10–402(c)(2), and thus was not "in violation" of the Act. The facts adduced on this issue and their significance were, of course, fiercely disputed at trial. Since this particular trial issue underlies the one we address

here, and relates directly to whether Seitz and Kisby carried the burden of production of evidence of compliance, we will recount the evidentiary facts that support the jury finding of compliance with § 10–402(c)(2).

The record reveals that the case arose out of a 1982–1983 investigation conducted by the New Jersey State Police (NJSP) into allegations that individuals who were not licensed by the New Jersey Casino Control Commission [2] were extorting money from licensed junket operators who sought to run gambling junkets into Atlantic City, New Jersey, casinos. Seitz, an NJSP officer, was working undercover in conjunction with the investigation, posing as a licensed junket operator. During the course of the investigation, it became apparent to Seitz that he would have to travel to Maryland to meet with plaintiff-appellant, Sigmund Kassap a/k/a Captain John Doyle, a Maryland resident. It was believed that in this meeting Kassap would furnish evidence of crimes of extortion and conspiracy to commit extortion.

Sometime around 15 July 1983, Seitz's superior, NJSP officer William Kisby, contacted then First Lieutenant Robert Graham (Graham), Assistant Commander of the Maryland State Police (MSP) Special Services Division and MSP's designated intelligence liaison officer, to seek the assistance of MSP and to determine if it would be lawful for Seitz to record his meeting with Kassap. At trial Graham testified that from the information related to him by Kisby, he determined that the criminal activity being investigated by NJSP might also involve extortion under Maryland law. Graham then authorized the tape recording of the meeting. The trial transcript suggests that from that point on, Graham, and other MSP officers, became actively involved in what could be viewed as a "joint" investigation. Graham testified that this involvement was not only to assist NJSP

---

**2.** The New Jersey Casino Control Act requires that persons engaged in the Atlantic City casino junket business be licensed by the State of New Jersey. N.J.Stat.Ann. §§ 5:12–102b, –102c, –117a (West 1983).

with its investigation, but was also carried out as part of MSP's own investigation. He further testified that "[t]his was as much a Maryland case as it was a New Jersey case."

On 20 July 1983, Seitz met with Kassap and others at the Pimlico Hotel in Baltimore. Seitz recorded the meeting on an NJSP Nagra recording device which may or may not have been previously registered with the Maryland Department of Public Safety and Correctional Services.[3] Seitz evidenced his prior consent to the recording through introduction at trial of an MSP "CONSENT TO USE OF EAVESDROP EQUIPMENT" form signed by Seitz and dated 20 July 1983. Also on the morning of the 20th, prior to the meeting, Kisby had met with Graham and other MSP officers to discuss plans for visual surveillance and security at the Pimlico Hotel. The MSP provided a surveillance team that maintained visual surveillance of the Pimlico Hotel both before and during the meeting. The team recorded the surveillance using still photography and videotape.

On 21 February 1985, Kassap filed a civil suit under § 10–410 against Seitz and others. He alleged a violation of the Act. Kisby was later joined as a defendant. The case was tried before a jury in the Circuit Court for Baltimore County (John Fader, II, J., presiding). The jury returned a verdict in favor of Seitz and Kisby. Kassap noted a timely appeal to the Court of Special Appeals. Before argument in that court, we brought the matter here by writ of certiorari.

### III.

It is well established that the broad concept of "burden of proof" consists of at least two component parts: the burden of production (also referred to as the duty of

---

**3.** This device was at some point registered pursuant to § 10–411. The date of its registration was disputed at trial, being either 19 or 26 July 1983. That dispute, however, may have been academic as it appears that registration on either date would have been in compliance with § 10–411.

going forward with the evidence) and the burden of persuasion. *Montgomery Co. Fire Bd. v. Fisher,* 298 Md. 245, 256, 468 A.2d 625, 630–631 (1983). In the recent case of *Commodities Reserve Corp. v. Belt's Wharf,* 310 Md. 365, 368 n. 2, 529 A.2d 822, 823 n. 2 (1987), Judge Rodowsky, writing for the Court, noted Dean McCormick's analysis of the practical distinctions between the respective burdens.

'The burden of producing evidence on an issue means the liability to an adverse ruling (generally a finding or directed verdict) if evidence on the issue has not been produced. It is usually cast first upon the party who has pleaded the existence of the fact, but ... may shift to the adversary when the pleader has discharged his initial duty. The burden of producing evidence is a critical mechanism in a jury trial, as it empowers the judge to decide the case without jury consideration when a party fails to sustain the burden.

'The burden of persuasion becomes a crucial factor only if the parties have sustained their burdens of producing evidence and only when all of the evidence has been introduced. It does not shift from party to party during the course of the trial simply because it need not be allocated until it is time for a decision. When the time for a decision comes ... [t]he jury must be told that if the party having the burden of persuasion has failed to satisfy that burden, the issue is to be decided against him. If there is no jury and the judge finds himself in doubt, he too must decide the issue against the party having the burden of persuasion [C. McCormick, *McCormick on Evidence* § 336, at 947 (3d ed. 1984) ].'

Kassap's primary challenge on appeal is to the trial court's denial of a proposed instruction which would have placed on Seitz and Kisby the burden of proving by a preponderance of the evidence the fact that their electronic surveillance complied with § 10–402(c)(2).[4] Put otherwise,

---

**4.** The rejected instruction first recited most of § 10–402(c)(2) and then stated:

Kassap objects because the jury instructions placed on him the burden of persuading the jury that Seitz and Kisby did not comply with § 10–402(c)(2). While a plausible argument can be made on behalf of Seitz and Kisby that, contrary to Kassap's assertion, the jury instruction taken as a whole, see *Pressley v. State,* 295 Md. 143, 152, 454 A.2d 347, 353 (1983), in fact, placed on them the full burden of production and persuasion on the issue, we accept *arguendo* Kassap's view of the jury instructions as correct.[5]

We hold, however, that the trial court's failure to instruct the jury as requested was not error since (as we will explain) Seitz and Kisby labored only under the duty of producing sufficient evidence to meet Kassap's prima facie

---

The essential elements of this exception to the general prohibition of secret recordings of private conversations are as follows:

(1) That the person making the interception is an officer of the Maryland State Police, or another Maryland law enforcement agency, or that the person making the interception is acting at the prior direction of such a Maryland police officer, before making any interception, *and* that the person making the interception is acting under the supervision of such a Maryland police officer while making the interception;

(2) That the interception occur in order to provide evidence of a Maryland offense and not solely for the purpose of providing evidence of a violation of the laws of another State;

(3) That the interception occur in order to provide evidence of one of the Maryland offenses enumerated in the statute, which offenses include extortion under Maryland law; and

(4) That the person making the interception has consented to the interception *prior* to the time the interception occurs.

Unless you find that the Defendants [Seitz and Kisby] have borne their burden of proof by a preponderance of the evidence with respect to each and every element of this exception, then you must find for the Plaintiff [Kassap].

5. Kassap argues only the burden of proof portion of the rejected instruction, and that is the only part of it we address. We do not thereby intimate that we regard the instruction as correct in other respects. For example, the instruction assumes that if § 10–402(c)(2) is to apply, the offenses under investigation must be violations of Maryland law. The accuracy of that assumption is not involved in the case before us, and we do not decide that question, but it is not necessarily correct. *See State v. Intercontinental, Ltd.,* 302 Md. 132, 140–142, 486 A.2d 174, 178–179 (1985).

case of a violation of the Act. At no time did they bear the burden of persuasion on the issue.

Kassap's view of the plaintiff's burden of proof is simple and straightforward: once a plaintiff has established a prima facie case, *i.e.*, produced legally sufficient evidence of a willful interception of a private conversation, the burden of both production of the evidence and persuasion on the issue of compliance with § 10–402(c)(2) shifts to the defendant. He contends that § 10–402(c)(2) is an exception to the general statutory prohibition against electronic surveillance which has not been consented to by all participants to the conversation. It is incumbent on the party claiming the benefit of the exception, the argument continues, to prove that his or her conduct comes within the exception.

Seitz and Kisby dispute that § 10–402(c)(2) operates as an "affirmative defense" type of statutory exception. They argue, in essence, that a defendant's duty is to meet plaintiff's prima facie case with evidence legally sufficient to show compliance with § 10–402(c)(2). Once this is accomplished, noncompliance becomes an element of proof of a violation of the Act. Proof by a preponderance of the evidence that a violation has occurred is, of course, the fundamental responsibility of the plaintiff. They also assert that in a criminal prosecution under the Act, once the defendant produces evidence of compliance with § 10–402(c)(2), the prosecution is constitutionally obligated to bear the risk of nonpersuasion on the issue. Since the Act is a penal statute, they argue, the burdens of persuasion with regard to criminal and civil liability should be the same.

As we prepare to assess these arguments, we note that the Act does not offer a formula for allocating the various burdens of proof. Nor have any reported opinions of this Court or the Court of Special Appeals previously addressed this issue.

We have often recognized that the Act finds its genesis in and is substantially patterned after Title III of the Omnibus

Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2521 (Title III). *Ricks v. State,* 312 Md. 11, 15, 537 A.2d 612, 614, *cert. denied,* —— U.S. ——, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988), and cases cited therein. Thus, we have on occasion sought guidance from federal cases interpreting or applying Title III. *See Ricks,* 312 Md. at 21–24, 537 A.2d at 616–618; *Adams v. State,* 289 Md. 221, 424 A.2d 344 (1981); *State v. Mayes,* 284 Md. 625, 635–638, 399 A.2d 597, 603–605 (1979). Section 2511(1) of Title III and § 10–402(a) of the Act are substantially similar in what both define as "unlawful."[6]

---

**6.** The general prohibition section of Title III (18 U.S.C.S. § 2511(1) (1979, 1988 Cum.Supp.)), provides:

(1) Except as otherwise specifically provided in this chapter [18 U.S.C. §§ 2510 et seq.] any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

Also both the Act and Title III contain one-party consent provisions that provide for exceptions to the general statutory prohibitions. Subsections (c) and (d) of § 2511(2) of Title III give broad allowance to interceptions when one of the parties to the communication has given prior consent.[7] Unlike its federal counterpart, however, § 10–402(c)(2) of the Act limits permissible instances of one-party consent to interceptions by "an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer" in order to "provide evidence of the commission of" certain listed offenses. The Maryland one-party consent provision is substantially more restrictive and affords greater protection from surreptitious electronic surveillance than does its counterpart in Title III. *See* Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law*, 8 U.Balt.L.Rev. 183, 194 (1979). Recognizing this disparity, however, we may, nonetheless, look to federal case law to observe the role of the one-party consent provision in relation to the statutory scheme.

Seitz and Kisby direct us to *Consumer Electronic Products v. Sanyo Elec., Inc.*, 568 F.Supp. 1194 (D.Colo.1983), and *By–Prod Corporation v. Armen–Berry Co.*, 668 F.2d

---

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

7. The one-party consent provisions of Title III (18 U.S.C.S. § 2511(2) (1979, 1988 Cum.Supp.)) read:

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United State or of any State.

956 (7th Cir.1982). *Consumer Electronic Products*, involved a counterclaim, for damages, by a defendant (ESP), alleging that the plaintiff's (CEPI) company president had unlawfully tape recorded a telephone conversation with the president of ESP. CEPI admitted that the conversation was recorded but contended that it did not violate Title III because its conduct was lawful under 18 U.S.C. § 2511(2)(d). The court granted CEPI's motion for summary judgment, and dismissed the counterclaim, holding that ESP did not set forth any facts to establish its contention that CEPI had violated Title III or acted outside the one-party consent exception. The court acknowledged that

> [s]imply taping a telephone conversation is not a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. Plaintiff will fall within the 'one-party consent' exception unless ESP can show that the interception was made for the purpose of committing a criminal, tortious or other injurious act. *The burden of proof is on the party making the allegation.*

*Consumer Electronic Products*, 568 F.Supp. at 1196 [emphasis supplied].

*By–Prod Corp.*, *supra*, also involved a defendant (Armen–Berry) asserting a counterclaim for damages alleging a violation of Title III. In that case a corporate officer of By–Prod recorded a telephone conversation between himself and an employee of Armen–Berry. In dispute was the question of whether the officer came within the one-party consent exception. The facts showed the officer would come within the exception unless his purpose was criminal, tortious, or otherwise injurious. Judge Posner, writing for the Court, reasoned

> [a] person not acting under color of state law may, without violating Title III of the Crime Control and Safe Streets Act, intercept a telephone call to which he is a party unless the purpose of the interception is to commit an act that is criminal or tortious under federal or state law, or 'any other injurious act.' 18 U.S.C. § 2511(2)(d).

*By–Prod,* 668 F.2d at 969. In affirming the federal district court's grant of summary judgment for *By–Prod,* the court held that "Armen–Berry had the burden of proving unlawful purpose" and that "no evidence of such intent was presented below...." *Id.* at 960.

In each of these cases, the court read the one-party consent exception in conjunction with the general prohibitions of 18 U.S.C. § 2511(1). We agree with Seitz and Kisby that each court treated the one-party consent provision as qualifying the scope of the general prohibitions and thus "viewed [it] as [an] aspect´... of the basic definition of the violation rather than as a so-called affirmative defense exception...." Appellees' Brief at 16. We also note that in both *Consumer Electronic Products* and *By–Prod Corp.,* the parties who claimed to come within the one-party consent exception did present some evidence of compliance with that provision. This supports Seitz and Kisby's position that they, as defendants, do bear the burden of production.

Kassap, on the other hand, guides us to *United States v. McCann,* 465 F.2d 147 (5th Cir.1972), *cert. denied sub nom. Kelly v. United States,* 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973). In this case, McCann and a codefendant were charged with and convicted of unlawfully intercepting wire communications in violation of 18 U.S.C. § 2511(1)(a). On appeal they argued, among other things, that the trial court should have dismissed the indictment because the government failed to negate all statutory exceptions outlined in 18 U.S.C. § 2511. The Fifth Circuit rebuffed this argument, holding:

> It was not necessary to recite in the indictment that the interceptions were made without consent. If the appellants believed that they came within the consent exception it was incumbent upon them to prove this fact. As was said in *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922), 'an indictment * * founded on a general provision defining the elements of an offense, * * *, need not negative the matter of an

exception made by a proviso or other distinct clause, whether in the same section or elsewhere and * * * it is incumbent upon one who relies on such an exception to set it up and establish it.'

*Id.* at 162. Kassap places a great deal of emphasis on the declaratory language in *McCann* requiring a party who believes that he or she comes within the one-party consent exception to prove it. This proof would encompass, by Kassap's reading, both the burden of production and persuasion. We do not read *McCann* so broadly.

First, the case may be limited to the holding that an *indictment* need not negate all statutory exceptions to Title III. Second, even giving credence to the proposition that one who relies on the one-party exception must prove it, that proposition does not necessarily require the proponent of the exception to persuade the jury that there was consent to the interception. *McCann* does not distinguish between the burden of production of evidence and the burden of persuasion. And unlike the cases of *Consumer Electronic Products* and *By–Prod*, the court here found that there was "absolutely no foundation in the evidence supporting a defense based on consent...." *Id.* at 162. It would be perfectly consistent with *Consumer Electronic Products* and *By–Prod* to interpret the language in *McCann* as requiring one who claims to have the consent of a participant to the intercepted conversation to produce evidence of that consent. In sum, we believe the federal cases reviewed support Seitz and Kisby's construction of the Act.

■ We also accept Seitz and Kisby's second argument: that allocation of the various burdens of proof should remain the same under the Act regardless of whether the proceeding is in the criminal or civil arena. The Act proscribes certain activity which may give rise to civil or criminal liability, or both. The major difference between proving civil liability and proving criminal liability is the quantum of proof (the measure of the burden of persuasion) necessary to establish each. Obviously, it is constitutionally impermissible for a state to require a criminal defendant

to disprove an element of an offense with which the defendant is charged. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). And the ultimate burden of persuading the fact-finder that the defendant is guilty beyond a reasonable doubt always remains with the state.

In keeping with *Patterson* and *Mullaney*, in a criminal proceeding under the Act, once the defendant produces legally sufficient evidence of compliance with § 10–402(c)(2) to raise it as a triable issue, it would be incumbent upon the State to persuade the jury otherwise. Since a plaintiff in a civil proceeding also seeks to prove a violation of the Act—one which is by definition comprised of the same elements as a criminal violation—we see no reason to alter the allocation of the burden of persuasion simply because the violation is being addressed in a civil rather than criminal proceeding.

■ Additionally, we recognize that in determining which party bears the burden of persuasion, a court may take into account a variety of factors, including consideration of what is fair under the circumstances. *See McCormick on Evidence*, § 337 at 952 (3d ed. 1984); 9 *Wigmore on Evidence*, § 2486 at 291 (Chadbourne rev. 1981). We believe that fairness dictated that Kassap bear the risk of nonpersuasion on the issue in this case.

The burden of persuasion is only important when the fact-finder's mind is in equipoise. Thus, that burden would have played a critical role in the case before us only if the jury's collective mind was in equal balance on the issue of whether Seitz and Kisby came within the one-party consent provision. In other words, equipoise on this issue would have meant that the jury was neither persuaded nor unpersuaded as to whether Seitz and Kisby's conduct violated the Act. Since it was Kassap who sought to change the status quo, and it was Kassap who bore the ultimate burden of

persuading the jury that Seitz and Kisby did in fact violate the Act, fairness to all parties involved required placing the risk of nonpersuasion on him.

We shall not further review the evidentiary facts; we have no doubt that Seitz and Kisby introduced sufficient evidence of compliance with § 10–402(c)(2) to satisfy their burden of production. Thus, for the reasons we have indicated, Kassap as the plaintiff in this civil action was responsible for persuading the jury that Seitz and Kisby did not comply with the one-party consent provision and were, therefore, in violation of the Act. Consequently, the trial court did not err in declining to instruct the jury as Kassap requested.

Because of the decision we reach on this issue and because the verdict questions, answered by the jury in this instance, related only to the issue herein addressed,[8] we need not and do not address any other complaints raised by Kassap with regard to the jury instructions.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

---

**8.** Although there were eight questions on the verdict sheet, the jury answered only the first three which read:
> 1. Was the interception on July 20, 1983 made at the prior direction of an investigative or law enforcement officer?
>
>      *    *    *    *    *    *
>
> 2. Was the interception on July 20, 1983 made under the supervision of an investigative or law enforcement officer?
>
>      *    *    *    *    *    *
>
> 3. Did the interception on July 29, 1983 occur in order to provide evidence of the commission of the offense of extortion under a Maryland law?

Following these three questions were directions to find for Seitz and Kisby if the answer was "yes" to each of the questions as to each defendant. The jury answered each of these questions in the affirmative, and then, following the verdict sheet instructions, found for Seitz and Kisby without answering any of the remaining questions. Thus, the sole issue actually addressed by the jury was the issue of compliance with § 10–402(c)(2).