*Estate of Jeffrey Blair by Personal Representative Tiauna Blair v. David Austin*, No. 35, September Term 2019.  Opinion by Hotten, J.

**APPELLATE REVIEW – JURY FACTUAL FINDINGS –** In a civil jury trial, when the evidence produces only one inference, then it is an issue of law for the court to decide. However, where the evidence generates several possible inferences, the jury, as the trier of fact, is the sole arbitrator of the weight and value of the evidence.  Appellate courts have very limited roles in reviewing the jury's factual findings and must not substitute the jury's findings with its own.  The Court of Appeals held that the Court of Special Appeals erred when it replaced the jury's factual findings that Officer Austin exceeded the level of force an objectively reasonable officer would use under the circumstances for its own.

**EXCESSIVE FORCE – EVIDENCE – LEGAL SUFFICIENCY –** In a civil jury trial, the plaintiff must establish legally sufficient evidence, under a preponderance of the evidence standard, to support a verdict in favor of the plaintiff.  In an excessive force case, the trier of fact must determine that a preponderance of the evidence establishes an officer exceeded the level of force that an objectively reasonable officer would use under the circumstances, to favorably find for the plaintiff.  The Court of Appeals held that legally sufficient evidence supported the trial court's decision to deny Officer Austin's motions for judgment and submit the case to the jury to decide whether Officer Austin exceeded the level of force that an objectively reasonable officer would have used under the circumstances.

**EXCESSIVE FORCE – VIDEO EVIDENCE –** In *Scott v. Harris*, the United States Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).  The Court of Appeals held that the Court of Special Appeals misapplied *Scott* to this case and should not have conducted its own independent evaluation of the video evidence.

Circuit Court for Baltimore City
Case No. 24-C-15-007117
Argued: December 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 35

September Term, 2019

_____

ESTATE OF JEFFREY BLAIR BY
PERSONAL REPRESENTATIVE
TIAUNA BLAIR

v.

DAVID AUSTIN
_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Battaglia, Lynne A. (Senior Judge,
Specially Assigned),

JJ.
_____

Opinion by Hotten, J., which Barbera,
C.J., and McDonald, J., join.
Opinion by Watts, J.
Getty, Booth, and Battaglia, JJ., dissent.

_____

Filed: June 2, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

A jury in the Circuit Court for Baltimore City awarded damages to the Estate of Jeffrey Blair ("the Estate")[1] after finding that Baltimore City Police Officer David Austin ("Officer Austin") used excessive force during his encounter with Jeffrey Blair ("Mr. Blair"). The Court of Special Appeals reversed and held that Officer Austin acted as a reasonable officer would under the circumstances, based on the Court's independent evaluation of video evidence. The Estate, through its Personal Representative, Tiauna Blair ("Ms. Blair"), seeks review of the opinion of the Court of Special Appeals. We granted *certiorari* to address the following question:

> Did [the Court of Special Appeals] err when, based solely on [its] interpretation of the video evidence that the jury considered in reaching its verdict, it overturned the jury's factual finding that [Officer Austin] exceeded the level of force that an objectively reasonable officer in his situation would have used?

For reasons expressed below, we reverse the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

On February 22, 2015 at approximately 12:00 p.m., Officer Austin, while on routine patrol duty, stopped at a traffic light at the intersection of Pennsylvania Avenue and Martin Luther King Jr. Boulevard in Baltimore City. He observed Mr. Blair driving on the wrong side of the road, entering the intersection, and making a right turn against the red light. Officer Austin activated his lights and siren, cleared the intersection, and pursued Mr. Blair, who initially failed to stop his vehicle as directed. Mr. Blair drove at a speed between 20

---

[1] Mr. Blair died as a result of circumstances unrelated to this incident before his wife, Tiauna Blair brought this action.

and 25 miles per hour, making several turns and running another red light, before pulling over. Although Mr. Blair failed to stop his vehicle as directed and briefly drove on the wrong side of the road, he did not force other drivers off the road, cause a collision, or otherwise place Officer Austin or pedestrians at risk during the slow pursuit.

After driving about a mile, a surveillance video camera without audio capacity, mounted above the street level on the 1000 block of Fremont Avenue, showed Mr. Blair's vehicle and Officer Austin's patrol vehicle advance toward the camera and stop on the right side of the road. Officer Austin observed Mr. Blair lean over toward his passenger seat before exiting his vehicle. Although the video does not reveal Mr. Blair's actions inside his vehicle, the video shows Mr. Blair, relatively large in stature, originally emerge from his vehicle and move toward Officer Austin's patrol car. The surveillance video does not reflect whether Mr. Blair was armed. In response, Officer Austin exited his vehicle, briefly attempted to shield himself with his door, and then removed himself from behind the door, initially without his weapon drawn. Thereafter, Officer Austin advised Mr. Blair to return to his vehicle. Instead, Mr. Blair rapidly increased his pace toward Officer Austin, but there was no indication whether Mr. Blair was armed.

Although Officer Austin testified that Mr. Blair attempted to grab Officer Austin's firearm and then appeared to go into his pants' pocket as if to grab a weapon, Officer Austin also testified that he withdrew his firearm *before* he thought Mr. Blair may have been reaching for a weapon. The surveillance video appears to have an obstructed view that does not clearly reflect any movements consistent with Mr. Blair reaching into his pants' pocket, or the presence of a weapon in Mr. Blair's possession; however, no weapon was

2

recovered on the scene. Additionally, no evidence indicated that Mr. Blair verbally threatened Officer Austin. The video reveals that minimal time elapsed between when Officer Austin withdrew his firearm and when Mr. Blair fell to the ground after being shot several times. Subsequent testimony revealed that Officer Austin fired four shots at Mr. Blair.

After Mr. Blair fell to the ground, Officer Austin called for additional law enforcement officers and a medic to treat Mr. Blair. While Mr. Blair lay on the ground, Officer Austin maintained a distance from him, testifying that he did so because he believed Mr. Blair possessed a weapon. Officer Austin testified that Mr. Blair failed to remain on the ground after being shot; thus, when the responding law enforcement officers arrived on the scene, they subdued him by use of a taser. Subsequently, an ambulance transported Mr. Blair to shock trauma at the University of Maryland Medical Center, where he was treated for gunshot wounds to his abdomen and right hand.

Mr. Blair was released from the hospital to Central Booking in Baltimore City, on or about March 9, 2015. He was held on bail for charges related to this incident and remained in custody until May 6, 2015. In June 2015, Mr. Blair died of causes unrelated to this incident.

*Procedural Background*

1. Circuit Court for Baltimore City

In 2016, Ms. Tiauna Blair, the widow of Mr. Blair, filed a complaint on behalf of his Estate in the Circuit Court for Baltimore City against several law enforcement officers, including Officer Austin. The complaint sought relief for nine counts, including one count

3

of civil assault, one count of false arrest, two counts of false imprisonment, one count of intentional infliction of emotional distress, one count of conversion, one count of excessive force, one count of deprivation of property without due process, and one survival action, in connection with the encounter against Mr. Blair. At trial, the parties presented the video camera evidence, testimony from several fact and expert witnesses, and documentary evidence, including Mr. Blair's medical records and a diagram of the scene.

### A. The Estate's Case

On behalf of the Estate, the following witnesses were called: Ms. Anne Blair, Mr. Blair's mother; Ms. Tiauna Blair, widow of Mr. Blair and Personal Representative of the Estate; Rachel Bennett, Esquire, an assistant public defender who represented Mr. Blair on a previous occasion; and Dr. Tyrone Powers. Dr. Powers, a former Maryland State Trooper, FBI agent, and consultant for police departments, testified as an expert witness for the Estate and opined regarding the reasonableness of the use of force by Officer Austin. During his testimony, Dr. Powers explained a concept called the continuum of force, which describes the seven levels of force law enforcement officers may use to initiate and complete an arrest or stabilize a situation involving members of the public. He asserted that "a reasonable officer being attacked by an unarmed individual would have limited his use of force to defensive tactics or impact techniques, such as use of a baton or a taser[]" and that "[Officer] Austin's use of deadly force—firing his [weapon]—breached this standard." *Austin v. Estate of Blair by Blair*, No. 580, 2019 WL 1873495, at *1 (Md. Ct. Spec. App. Apr. 25, 2019) (footnote omitted). He concluded that Officer Austin exceeded the level of force an objectively reasonable officer would use under the circumstances.

4

*B. Officer Austin's Case*

Following the denial of Officer Austin's motion for judgment at the end of the Estate's case, Officer Austin presented three witnesses: Officer Austin, Baimba Sesay, and expert witness Mr. Charles Key. At trial, Officer Austin conceded that he did not see Mr. Blair in possession of a weapon, but thought he might have one because he reached for his pants' pocket. During cross-examination, Officer Austin conceded that the police academy trained him to use a collapsible baton or mace spray to maintain distance between himself and another person. However, he elected to control the distance between himself and Mr. Blair by pulling his firearm and discharging it.

Officer Austin offered Mr. Charles Key as an expert witness. The defense attorney for Officer Austin presented the following hypothetical factual scenario to Mr. Key:

> Q: Let me present you with additional hypothetical facts. A uniformed police officer, marked police vehicle, observes an individual driving the wrong way against traffic and running a red light. Fact number one. Fact number two, the officer attempts to stop the individual when he fails to stop. Hypothetical fact number three, after the individual stops, he gets out of his vehicle and runs toward[] that officer. Hypothetical fact number four of six, the officer observes that it is a large male, orders him to stop, and begins to back away from him in an area where there's snow and ice on the ground. Hypothetical fact five of six. The man reaches toward[] his waist, continues to run at the officer, closest to narrowly within an arm's reach of that particular officer, reaches toward[] the officer's weapon, and then reaches toward[] his own waist. And the final hypothetical fact, after retreating a distance, the officer draws his weapon and discharges his weapon upon the individual.
>
> Now, given those facts that I've just described, do you have an opinion within a reasonable degree of certainty within your field of expertise as to whether Officer Austin was objectively reasonable in the discharge of his weapon and was that consistent with the accepted practices of police standards, and policies, and training?

5

Based on the hypothetical presented, Mr. Key rendered an opinion regarding the reasonableness of Officer Austin's use of force and concluded that Officer Austin acted reasonably under the circumstances and pursuant to police standards and policies.

Mr. Blair's medical records reflected a history of mental illness. Those records included Mr. Blair's thoughts regarding the interaction between him and Officer Austin, including suicidal ideation and the hope that he would be shot by a police officer. The record does not reflect, however, that Mr. Blair communicated this intent to Officer Austin or that Officer Austin was otherwise cognizant of Mr. Blair's intention, or the existence of those medical records at the time of the incident.

*C. Motions for Judgment and Judgment Notwithstanding the Verdict*

At the close of the Estate's case, Officer Austin moved for judgment as a matter of law pursuant to Maryland Rule 2-519[2], asserting that the Estate failed to establish a *prima*

---

[2] Maryland Rule 2-519 reads:

(a) **Generally.** A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case.

(b) **Disposition.** When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

(continued . . .)

*facie* case regarding the question of excessive force, and whether the force applied was objectively reasonable. Officer Austin argued, regarding the assault count against him, that an essential element of assault is an apprehension of imminent bodily harm. Officer Austin asserted that because he fired his weapon almost immediately after drawing it, there is no evidence that Mr. Blair saw it coming and, therefore, cannot prove an essential element of assault. Regarding the excessive force count, Officer Austin argued that Dr. Powers' testimony was not supported by any factual predicate and should not be credited. Officer Austin contended that he ceased the use of force against Mr. Blair once Mr. Blair was on the ground. Considering all the evidence and any rational inferences thereto, in the light most favorable to the Estate as the non-moving party, the circuit court granted Officer Austin's motion on several counts, including the count of false arrest, both counts of false imprisonment, the count of intentional infliction of emotional distress, the count of conversion, the count of deprivation of property, and the survival action. The circuit court denied Officer Austin's motion for judgment relative to the civil assault and excessive force

---

(. . . continued)

(c) **Effect of Denial.** A party who moves for judgment at the close of the evidence offered by an opposing party may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the party withdraws the motion.

(d) **Reservation of Decision in Jury Cases.** In a jury trial, if a motion for judgment is made at the close of all the evidence, the court may submit the case to the jury and reserve its decision on the motion until after the verdict or discharge of the jury. For the purpose of appeal, the reservation constitutes a denial of the motion unless a judgment notwithstanding the verdict has been entered.

7

counts, finding there was sufficient evidence to generate a jury question on both counts. At the close of the entire case, Officer Austin renewed his motion for judgment regarding the remaining counts, but the motion was denied, and the case was submitted to the jury for its consideration.

Following a consideration of the evidence presented and deliberations, the jury returned a verdict, determining that Officer Austin civilly assaulted Mr. Blair and used excessive force in his interaction with Mr. Blair, in violation of Article 24 of the Maryland Declaration of Rights, and awarded damages in favor of the Estate. Thereafter, Officer Austin filed a motion for judgment notwithstanding the verdict pursuant to Maryland Rule 2-532[3], which was denied. Officer Austin noted a timely appeal to the Court of Special Appeals.

## 2. The Court of Special Appeals Proceeding

Ultimately, the Court of Special Appeals reversed and held in favor of Officer Austin, based on its independent weighing of a single piece of evidence – the surveillance video.

Relying on *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007), the Court held that "when faced with a claim of excessive use of force by a police officer where reliable video evidence is available, appellate courts should not blindly adopt the interpretation promoted by either of the parties. Rather, an appellate court should view the facts in the

---

[3] Maryland Rule 2-532(a) reads: "In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion."

8

light portrayed by the video." *Austin*, 2019 WL 1873495 at *3 (internal citation omitted). Although "a factfinder is to assess the credibility of the witnesses and make the necessary inferences to determine the material facts[,]" the Court held that the material facts were on the video, not in the subsequent testimony. *Id.* at *3 (citing *Benton v. State*, 224 Md. App. 612, 121 A.3d 246 (2015)).

The Court of Special Appeals concluded that Officer Austin acted as a reasonable officer would under the circumstances. The Court noted that

> [u]nder the objective reasonableness standard, the relevant question is not whether there was any evidence, no matter how slight, from which a jury might reasonably have concluded that this specific officer on this specific occasion could have or should have done something different; the question is whether the actions taken were so deficient that no reasonable officer under the same circumstances would have done the same thing.

*Id.* at *5 (footnote omitted). The Court also observed that "[i]t is a bedrock principle of law that appellate judges will not, in the absence of abuse of discretion, overturn factfinding below. Yet the advent and prevalence of video cameras has created a crack in this bedrock." *Id.* at *1. Accordingly, the Court reversed.

Judge Stuart Berger dissented, disagreeing with the Majority that the video evidence demonstrated the reasonableness of Officer Austin's actions. He surmised that "[a] video can show what happened, but it cannot tell a jury how a reasonable officer would have responded in the circumstances." *Id.* at *6. Judge Berger further explained that the video showed Officer Austin

> had reason to believe he was in danger. Nevertheless, the jury had to assess the level of danger, and [Officer] Austin's response to that danger, from the perspective of an objectively reasonable officer. In doing so, an average juror, lacking the specialized training of a police officer, could reasonably

look for some guidance as to how an objective[ly] reasonable officer, armed with both lethal and non-lethal weapons, would have approached the situation. Dr. Powers'[] testimony provided such guidance.

*Id.* at *6. Judge Berger explained that "[w]eighing these various considerations is a difficult and fact-intensive undertaking, and [ ] reasonable minds could easily reach different results." *Id.* at *7. Ultimately, Judge Berger concluded that "the level of risk associated with the different choices that [Officer] Austin faced on that day [was] a question of fact for the jury[;]" thus the Majority unjustifiably took the question of whether Officer Austin's use of deadly force was reasonable from the province of the jury. *Austin*, 2019 WL 1873495 at *7 (Berger, J., dissenting).

Thereafter, the Estate filed a petition for writ of *certiorari*, which we granted. Officer Austin filed a conditional cross-petition, which we denied.

**STANDARD OF REVIEW**

In a jury trial, we review a trial court's "denial of a motion for judgment [ ] if there is 'any evidence, no matter how slight, that is legally sufficient to generate a jury question.' Put another way, we will reverse the trial court's denial of a motion for judgment [ ] only if the facts and circumstances permit but a single inference as relates to the appellate issue presented." *Jones v. State*, 425 Md. 1, 30-31, 38 A.3d 333, 350 (2012) (internal citation omitted). "We review the trial court's decision to grant or deny a motion for judgment in a civil case without deference." *Sugarman v. Liles*, 460 Md. 396, 413, 190 A.3d 344, 353 (2018). In our review, we "conduct the same analysis that a trial court should make when considering the motion for judgment[,]" meaning we "evaluate all evidence and reasonable evidentiary inferences, viewed in a light most favorable to the non-moving party" to

10

determine whether the trial court properly granted or denied the motion for judgment. *C&B Construction, Inc. v. Dashiell*, 460 Md. 272, 279, 190 A.3d 271, 275 (2018) (internal citations and quotation marks omitted). "A judge must grant a civil defendant's motion for judgment as a matter of law if the plaintiff failed to present evidence that could persuade the jury of the elements of the tort by a preponderance of the evidence." *Sugarman*, 460 Md. at 412, 190 A.3d at 353 (internal citation and quotation marks omitted) (emphasis omitted). Ultimately this is a question of law, which we review under a *de novo* standard of review. *Howell v. State*, 465 Md. 548, 561, 214 A.3d 1128, 1136 (2019).

## DISCUSSION

*A. The Court of Special Appeals lacked the authority to usurp the jury's role and substitute its own factual findings for those of the jury.*

In a jury trial, "when the facts and circumstances only permit one inference with regard to the issue presented, [ ] the issue is one of law for the court and not one of fact for the jury." *Nat't Union Fire Ins. Co. of Pittsburgh v. The Fund for Animals, Inc.*, 451 Md. 431, 457, 153 A.3d 123, 138 (2017) (quoting *Thomas v. Panco Mgmt. of Maryland, LLC*, 423 Md. 387, 394, 31 A.3d 583, 588 (2011)). When the evidence presents more than one inference, however, the issue is for the jury to decide. *Id.* In a jury trial, "the jury [ ] determine[s] [ ] whether the burden of proof has been met. . . . In making this determination, the jury assesses and evaluates the weight to be assigned to the evidence presented to it and decides its effect." *Dennard v. Green*, 335 Md. 305, 321, 643 A.2d 422, 430 (1994) (quoting *Thodos v. Bland*, 75 Md. App. 700, 714, 542 A.2d 1307, 1314 (1988)). In other words, "[t]he weight and value of the evidence are matters solely for the jury." *Id.*

11

at 323, 643 A.2d at 431. We have long held that "[n]either the trial court nor this Court is permitted to substitute its evaluation of [the] evidence for that of the jury. . . . To do so would be an invasion of the jury's province[.]" *Id.* at 321, 643 A.2d at 430 (quoting *Thodos*, 75 Md. App. at 714, 542 A.2d at 1314) (ellipses in *Dennard*). Accordingly, an appellate court has "no power to review the finding of the jury upon matters of fact." *Johnson v. Johnson*, 105 Md. 81, 84, 65 A. 918, 919 (1907). Ultimately, even if we would reach a different conclusion than the jury, we are not permitted to substitute the jury's factual findings for our own.

Here, the evidence, including the video evidence, permitted several inferences and interpretations. On the question of excessive force, Officer Austin and the Estate produced expert witnesses who expressed conflicting opinions. As such, it was for the jury to weigh and evaluate the level of risk generated by the interaction between Officer Austin and Mr. Blair, the options relative to the levels of force available to Officer Austin in response to the interaction, and the level of force an objectively reasonable officer would have used under the circumstances.[4]

Based on its analysis and weighing of the evidence, the jury found that Officer Austin exceeded the appropriate level of force and acted unreasonably under the circumstances. Thereafter, the trial judge denied Officer Austin's motion for judgment notwithstanding the verdict, concluding that the jury's verdict was supported by legally

---

[4] The jury also evaluated whether Officer Austin civilly assaulted Mr. Blair, but at issue before this Court is the excessive force count. Thus, our discussion is limited to the question of excessive force.

12

sufficient evidence. However, on appeal, the Court of Special Appeals usurped the jury's role and substituted its own factual findings for those of the jury, asserting that the decision of the United States Supreme Court in *Scott* permitted the Court to "engage in a more searching review of [the] video evidence" because it involved "allegations of excessive use of force by police officers in the line of duty." *Austin*, 2019 WL 1873495 at *1. As we discuss below, the Court of Special Appeals misapplied *Scott*. The Court rejected the jury's factual findings, thereby invading "the jury's province[.]" *Dennard*, 335 Md. at 321, 643 A.2d at 430. The Court erred in overturning the jury's factual findings based on its own interpretation of the video camera evidence because it had "no power to review the finding of the jury upon matters of fact." *Johnson*, 105 Md. at 84, 65 A. 919.

The dissent suggests that this case is similar to *Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 696 (1st Cir. 1994), and indicates that the jury should not "second-guess" Officer Austin's decision to use deadly force against Mr. Blair. Admittedly, this may be a close case, as the dissent observes. However, a reasonable jury could have concluded that Officer Austin acted as an objectively reasonable officer would have, or not, based on the presented evidence, and an appellate court cannot justifiably invade the jury's province merely because the case is close. In *Roy*, law enforcement officers responded to a domestic violence situation and were approached by an intoxicated, knife-wielding man, who verbally threatened them. 42 F.3d at 693. The man charged at the officers, and the officers initially retreated. Shortly after charging, the man lunged at the officers with his knife, and the officers discharged their firearms, striking the man twice. *Id.* The First Circuit held that "the facts might point so clearly toward reasonableness that

13

no reasonable jury could decide for the plaintiff" and determined that no jury could decide that the officers acted in an objectively unreasonable manner in using deadly force against the man. *Id.* at 694.

Contrary to the dissent's position, that is not the case here. Although a "jury does not automatically get to second-guess these life and death decisions," the jury must decide whether an objectively reasonable officer would have used deadly force in the same or similar situation. *Id.* at 695. As we discuss *infra*, the Estate and Officer Austin both submitted evidence suggesting that Officer Austin was objectively reasonable and unreasonable in using deadly force against Mr. Blair. A reasonable jury could have credited or discredited testimony and evidence on either side and decided in favor of either the Estate or Officer Austin. Because a reasonable jury could have resolved the question of excessive force in this case in favor of either party, the First Circuit's decision in *Roy* is unpersuasive in the case at bar. Accordingly, we decline to invade the jury's province in the instant case and maintain the Court of Special Appeals erred in doing so.

> *B. Legally sufficient evidence supported the trial court's denial of Officer Austin's motion for judgment and its decision to submit the question to the jury regarding Officer Austin's use of excessive force.*

### 1. Legally Sufficient Evidence

Evidence is legally sufficient when it could satisfy the burden of proof in the eyes of a reasonable jury. *See Jones*, 425 Md. at 31, 38 A.2d at 350. "[T]he broad concept of 'burden of proof' consists of at least two component parts: the burden of production (also referred to as the duty of going forward with the evidence) and the burden of persuasion." *Kassap v. Seitz*, 315 Md. 155, 161-62, 553 A.2d 714, 717 (1989).

14

The burden of producing evidence on an issue means the liability to an adverse ruling (generally a finding or directed verdict) if evidence on the issue has not been produced. . . . The burden of producing evidence is a critical mechanism in a jury trial, as it empowers the judge to decide the case without jury consideration when a party fails to sustain the burden.

*Id.* at 162, 553 A.2d at 717. This burden of production, however, fluctuates based on the burden of persuasion. Therefore, a trial judge must "account for and consider the appropriate burden of persuasion in deciding whether to allow the jury to decide an issue." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 270, 841 A.2d 828, 840 (2004) ("Darcars Motors"). After submitting the case to the jury, "if the party having the burden of persuasion has failed to satisfy that burden, the issue is to be decided against him." *Kassap*, 315 Md. at 162, 553 A.2d at 717. Thus, if the burden of persuasion is not satisfied by the plaintiff, the evidence is not legally sufficient to reasonably support a finding in favor of the plaintiff.

The burden of persuasion in a civil case is a preponderance of the evidence, meaning the plaintiff must prove that its case is more likely true than not true. *See Volodarsky v. Tarachanskaya*, 397 Md. 291, 305, 916 A.2d 991, 999 (2007); *see also* MD. CIVIL PATTERN JURY INSTRUCTIONS, Burden of Proof: Preponderance of the Evidence, 1:14 (MD. STATE BAR STANDING COMM. ON PATTERN JURY INSTRUCTIONS 5th ed. 2019). If the plaintiff fails "to present evidence that could persuade the jury of the elements of [a] tort *by a preponderance of the evidence*[,]" a reasonable jury could not find in favor of the plaintiff. *Darcars Motors*, 379 Md. at 270, 841 A.2d at 840-41 (emphasis in original); *see also Marrick Homes LLC v. Rutkowski*, 232 Md. App. 689, 707-08, 161 A.3d 53, 64 (2017) ("In a civil case, the evidence is legally sufficient to support a finding in [favor] of the prevailing

15

party if, on the facts adduced at trial[,] viewed most favorably to that party, any reasonable fact finder could find the existence of the elements of the cause of action by a preponderance of the evidence.").  Thus, the trial judge cannot submit the case to the jury for its consideration unless the judge determines that the plaintiff's evidence could satisfy the burden of proof in the eyes of a reasonable jury.

In an excessive force case, just as in any other civil tort, the plaintiff bears the burden to prove its case by a preponderance of the evidence.  As we explain in greater depth *infra*, in an excessive force case, the plaintiff must prove that the law enforcement officer acted in an objectively unreasonable manner in her or his use of force.  *Richardson v. McGriff*, 361 Md. 437, 452, 762 A.2d 48, 56 (2000).  Thus, the plaintiff must establish by a preponderance of the evidence that the officer exceeded the level of force an objectively reasonable officer would use under the same or similar situation.  In the case at bar, the trial court denied Officer Austin's motions for judgment, establishing that the Estate satisfied its burden of production.  Following deliberations, the jury rendered a favorable verdict for Mr. Blair, concluding that the Estate established, by a preponderance of the evidence, that Officer Austin exceeded the level of force an objectively reasonable officer would have used under the circumstances.

## 2. The Legally Sufficient Evidence in the Instant Case

The jury found, by a preponderance of the evidence, that Officer Austin exceeded the level of force an objectively reasonable officer would have used in her or his encounter with Mr. Blair.  The evidence in this case was legally sufficient to survive both motions for judgment and allow the case to be submitted to the jury for its consideration.  We explain.

16

As the Court of Special Appeals stated, "[w]hether a police officer has used excessive force in violation of the Maryland Declaration of Rights is judged under the standard of objective reasonableness established by the United States Supreme Court to analyze analogous claims made under the Fourth Amendment to the federal Constitution." *Austin*, 2019 WL 1873495 at *2 (citing *Richardson*, 361 Md. at 452, 762 A.2d at 56 (applying *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989))). "Determining whether the force used to effect a particular seizure is reasonable . . . requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1871 (internal citations and quotation marks omitted).[5]    This

---

[5] In *Graham*, Officer Connor, an officer of the Charlotte, North Carolina, Police Department, witnessed Dethorne Graham ("Graham") hastily enter and exit a convenience store and became suspicious. 490 U.S. at 388, 109 S. Ct. at 1868. Officer Connor made an investigative stop about one-half mile from the convenience store and "ordered [William] Berry [("Berry")] and Graham to wait while he found out what, if anything, had happened at the convenience store." *Id.* at 389, 109 S. Ct. at 1868. "When Officer Connor returned to his patrol car to call for backup assistance, Graham got out of the car, ran around it twice, and finally sat down on the curb, where he passed out briefly." *Id.*

In the ensuing confusion, a number of other Charlotte police officers arrived on the scene in response to Officer Connor's request for backup. One of the officers rolled Graham over on the sidewalk and cuffed his hands tightly behind his back, ignoring Berry's pleas to get him some sugar. . . . . Several officers then lifted Graham up from behind, carried him over to Berry's car, and placed him face down on its hood. [O]ne of the officers . . . shoved his face down against the hood of the car. Four officers grabbed Graham and threw him headfirst into the police car. . . . Finally, Officer Connor received a report that Graham had done nothing wrong at the convenience store, and the officers drove him home and released him.

*Id.* Because of the encounter, Graham suffered a broken foot, cuts on his wrists, a bruised

(continued . . .)

17

"reasonableness" determination, therefore, is incapable "of precise definition or mechanical application[;]" the factfinder must pay particular attention "to the facts and circumstances of each particular case[.]" *Id.* at 396, 109 S. Ct. at 1872. In its inquiry, the factfinder must judge a law enforcement officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" *Id.* In making its decision, the factfinder must consider the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, [ ] whether he is actively resisting arrest or attempting to evade arrest by flight[,]" and that law enforcement officers "are often forced to make split-second judgments [ ] in circumstances that are tense, uncertain, and rapidly evolving[.]" *Id.* at 396-97, 109 S. Ct. at 1872. Regarding deadly force specifically, a law enforcement officer may use deadly force when the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others[.]" *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985). "A police officer may not seize an unarmed, non[-]dangerous suspect by shooting him dead." *Id.* As such, an

_____

(. . . continued)
forehead, and an injured shoulder.

Ultimately, the United States Supreme Court held that the lower courts should have assessed whether the law enforcement officers acted objectively reasonable in their encounter with Graham. *Id.* at 399, 109 S. Ct. at 1873. Because the lower courts applied the incorrect standard, the Supreme Court vacated the judgment and remanded the case to the District Court with instructions to assess the officers' use of force under the correct standard. *Id.*

18

objectively reasonable officer would use deadly force *only* when threatened with serious physical harm.

In the case at bar, the trial court properly denied Officer Austin's motions for judgment and submitted the case to the jury. As we discussed *supra*, we review a trial court's "denial of a motion for judgment [ ] if there is 'any evidence, no matter how slight, that is legally sufficient to generate a jury question.'" *Jones*, 425 Md. at 30-31, 38 A.3d at 350 (internal citation omitted). In doing so, we "evaluate all evidence and reasonable evidentiary inferences, viewed in a light most favorable to the non-moving party" to determine whether the trial court properly granted or denied a motion for judgment. *C&B Construction*, 460 Md. at 279, 190 A.3d at 275 (internal citations and quotation marks omitted). The Estate had to present sufficient evidence to prove that Officer Austin acted in an objectively unreasonable manner in his use of force against Mr. Blair, to overcome Officer Austin's motions for judgment.

Regarding Officer Austin's first motion for judgment, the trial judge could only consider the evidence presented during the Estate's case. At this juncture, the trial judge and jury had observed the video evidence and considered testimony from four witnesses, including expert testimony from Dr. Powers. The evidence revealed that Officer Austin fired four separate shots at Mr. Blair, an unarmed civilian, but the evidence did not clearly establish *when* Officer Austin discharged his firearm. Based on the video evidence, a reasonable jury could find that Officer Austin's movements could have suggested he discharged his firearm at any moment after wielding his firearm. In offering his expert testimony on behalf of the Estate, Dr. Powers surmised that Officer Austin's action of

19

shooting Mr. Blair four separate times exceeded the level of force an objectively reasonable officer would have used in the same or similar situation. Dr. Powers opined that an objectively reasonable officer would have used non-lethal weapons at her or his disposal. At the time of Officer Austin's initial motion for judgment, the Estate had presented a *prima facie* case on the issue of excessive force, such that the case could proceed. As such, the trial court properly denied Officer Austin's initial motion for judgment.

At the close of all the evidence, Officer Austin renewed his motion for judgment. At this juncture, the trial judge was permitted to consider evidence submitted by the Estate's case in chief, outlined *supra*, and Officer Austin's defense. Evidence revealed during Officer Austin's defense could have suggested that Officer Austin's actions were objectively reasonable, or not. Because of Mr. Blair's relatively large stature and quick approach, an argument could be made that Officer Austin was forced to respond quickly to address, and ultimately de-escalate, the situation, and, thus, Officer Austin may have believed he was in danger. However, this alone may not have sufficiently shown that Mr. Blair's actions threatened Officer Austin or the greater public with serious physical harm, thereby justifying the use of deadly force.[6] In fact, no evidence indicated that Mr. Blair verbally threatened Officer Austin, the greater public, or other law enforcement officers.

---

[6] The dissent places great weight on how rapidly the encounter unfolded between Mr. Blair and Officer Austin. Certainly, the dissent recognizes, just as we do, that all law enforcement officers, at some point in their careers, will have to respond to "tense, uncertain, and rapidly evolving situations" similar to the encounter between Mr. Blair and Officer Austin. The use of deadly force is not reasonable simply because the situation is tense, uncertain, and rapidly evolving.

20

Although Mr. Blair's medical records revealed his suicidal ideation and hope that he would be shot by the police during this encounter, and thus his mental instability, this was unknown to Officer Austin at the time of the encounter. Additional evidence revealed that Mr. Blair initially failed to adhere to Officer Austin's commands to pull his vehicle over after a slow speed pursuit, but Mr. Blair did not engage Officer Austin in a dangerous, reckless, high-speed car chase that threatened serious harm to the public or law enforcement officers. Mr. Blair did not force other drivers off the road, cause a collision, or harm pedestrians during the slow pursuit or after exiting his vehicle.[7] Turning to the expert testimony, Dr. Powers suggested Officer Austin could have used non-lethal options during his interaction with Mr. Blair. However, Officer Austin was not carrying one of the suggested weapons, a taser, and testified that he believed using his baton would be ineffective because of Mr. Blair's size and speed. Officer Austin also testified that he believed using his mace at such a close range would have exposed both him and Mr. Blair to contact by the chemical. Mr. Key, testifying as an expert witness for Officer Austin, surmised that Officer Austin acted reasonably under the circumstances and pursuant to police standards and policies. We recognize that an objectively reasonable officer would adhere to proper law enforcement guidelines and policies, or else render said guidelines and policies meaningless. However, Officer Austin, himself, testified that he decided to pull and discharge his firearm, a lethal weapon, before he thought Mr. Blair may have

---

[7] We do not recount the "antecedent events" to suggest that antecedent events factor into whether Officer Austin acted as an objectively reasonable officer would at the precise moment of the shooting, as the dissent urges. We include these events to provide context for the entirety of the situation.

21

possessed or may have been reaching for a weapon. Officer Austin further testified that he used deadly force to maintain distance between Mr. Blair and himself, not to protect himself, the public, or other law enforcement officers and not because he believed himself, the public, or other law enforcement officers to be in danger of death or serious physical harm. Officer Austin admitted that he has been trained to accomplish this objective by using non-lethal means, but instead chose to use a lethal weapon. Despite compelling evidence submitted by both parties, we must review the entirety of the evidence in the light most favorable to the Estate as the non-moving party. The evidence reflects that there was sufficient evidence for the question of excessive force to be considered by the jury. As such, the trial court properly denied Officer Austin's renewed motion for judgment.

In reviewing the evidence for legal sufficiency, we do not suggest that an appellate court may assess an excessive force case with "20/20 vision of hindsight[.]" *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. Instead, we must determine whether the record at that juncture supported the trial court's denial of Officer Austin's motions for judgment and ultimately the submission of the case to the jury. In reviewing the evidence, we must include Dr. Powers' expert testimony, Mr. Key's expert testimony, and the surveillance video in our analysis. Accordingly, there was legally sufficient evidence that buttressed the trial court's denial of Officer Austin's motion for judgment and the decision to submit the case to the jury.

*C. The Decision in Scott is Inapplicable to the Instant Case.*

The United States Supreme Court decision in *Scott v. Harris*, which the Court of Special Appeals erroneously relied upon in support of its independent, restricted focus on

22

the video evidence in this case, is factually distinguishable from the instant case. In *Scott*, which was decided within the context of the denial of a motion for summary judgment, the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380-81, 127 S. Ct. at 1776. The holding in *Scott* in no way supports the decision by the Court of Special Appeals to review the video evidence to the exclusion of other evidence at trial, nor does the decision support usurping the jury's factual findings and verdict on the question of whether Officer Austin exceeded the level of force that an objectively reasonable officer would use under the circumstances.[8] Accordingly, the Court of Special Appeals erred in applying *Scott* to the case at bar.

### CONCLUSION

In conclusion, we hold that the Court of Special Appeals erred when it substituted its judgment for the factual findings and verdict of the jury regarding Officer Austin's excessive use of force, for that of its own, based on its own independent evaluation of the video camera evidence. As Judge Stuart Berger's very well-reasoned dissent observes, "[a] video can show what happened, but it cannot tell a jury how a reasonable officer would have responded in the circumstances." *Austin*, 2019 WL 1873495 at *6 (Berger, J.,

---

[8] We leave to an appropriate case in the future, should such a case arise, the predicate to allowance of a trial court or an appellate court, to determine as a matter of law, that a video is dispositive in a disputed case. However, we would not go so far as to hold that, under no circumstance would it be proper to dispose of a disputed case on what is seen in a video that is capable of only one interpretation, not subject to dispute by other evidence.

dissenting). Understandably, "an average juror, lacking the specialized training of a police officer, could reasonably look for some guidance as to how an objective[ly] reasonable officer, armed with both lethal and non-lethal weapons, would have approached the situation." *Id.* (Berger, J., dissenting). The Court of Special Appeals erred when it applied the United States Supreme Court decision in *Scott*, a case that is factually distinguishable from the case at bar. The issue of whether the force used was objectively reasonable under the circumstances was a question for the jury to resolve. We hold that legally sufficient evidence supported the trial court's decision to submit the case to the jury regarding Officer Austin's use of excessive force. We, therefore, reverse the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED. COSTS TO BE PAID BY OFFICER DAVID AUSTIN.**

Circuit Court for Baltimore City
Case No. 24-C-15-007117
Argued: December 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 35

September Term, 2019
_____

ESTATE OF JEFFREY BLAIR BY
PERSONAL REPRESENTATIVE TIAUNA
BLAIR

v.

DAVID AUSTIN
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Battaglia, Lynne A. (Senior
Judge, Specially Assigned),

JJ.
_____

Opinion by Watts, J.
_____

Filed: June 2, 2020

Respectfully, I agree with the outcome expressed in Judge Hotten's opinion, and would most assuredly reverse the Court of Special Appeals's judgment, see J. Hotten Slip Op. at 23-24, and remand to the Court of Special Appeals for consideration of the evidentiary issues raised by Officer David Austin, Respondent, on appeal but not addressed by that Court. I write separately to explain my reasons.

From my perspective, the Court of Special Appeals's decision is troubling, in that, as Judge Hotten aptly notes, the Court of Special Appeals usurped the jury's role as the finder of fact. See id. at 11-12. This Court would naturally be concerned if a trial court invaded the jury's province. It is even more concerning where an appellate court acts to do so. Here, in reviewing the denial of a motion for judgment, the Court of Special Appeals made an independent determination regarding whether video evidence showed excessive force. That pronouncement cannot be allowed to stand.

I would hold that the issue of whether a law enforcement officer's use of force was reasonable is a question of fact, see Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004); Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998); King v. Blankenship, 636 F.2d 70, 71 (4th Cir. 1980), and that the circuit court was correct in denying the motion for judgment[1] of Officer Austin, given that the Estate of Jeffrey Blair ("Mr. Blair's estate"),

---

[1]A motion for judgment—also known as a motion for judgment as a matter of law—is "[a] party's request that the court enter a judgment in its favor before the case is submitted to the jury . . . because there is no legally sufficient evidentiary basis on which a jury could find for the other party." *Motion for Judgment as a Matter of Law*, Black's Law Dictionary (11th ed. 2019). Here, Officer Austin moved for judgment at the close of Mr. Blair's estate's case and renewed the motion for judgment at the close of evidence. A review of the Court of Special Appeals's opinion shows that the Court did not distinguish

Petitioner, presented sufficient evidence to generate a question for the jury as to Officer Austin's liability for excessive force and assault.[2]

Despite setting forth the procedural history of the case, and stating that there was a motion for judgment at the end of Blair's estate's case and a motion for judgment at the conclusion of all of the evidence, and that the circuit court denied both motions, Judge Hotten's opinion reviews the propriety of the denial of the motion for judgment made at the close of Blair's estate's case as well as the motion for judgment made at the close of

---

which motion for judgment it was reviewing when it concluded that the circuit court "erred in denying [Officer] Austin's motion for judgment." David Austin v. Estate of Jeffrey Blair by Personal Representative Tiauna Blair, No. 580, Sept. Term, 2017, 2019 WL 1873495, at *2 (Md. Ct. Spec. App. Apr. 25, 2019) ("At the close of the Estate's case, Austin moved for judgment. The circuit court granted the motion on all counts except those alleging civil assault and excessive force. Austin renewed his motion on those counts at the close of evidence, but it was again denied. . . . [W]e conclude that . . . the circuit court [] erred in denying Austin's motion for judgment." (Footnote omitted)). In a footnote immediately following the holding, the Court of Special Appeals stated that Officer Austin raised four issues, including that the circuit court erred by "denying his motions for judgment[,]" and, because of the Court's "resolution of [that] issue, [it did] not address his remaining issues." Id. at *2 n.3.

This Court has stated that, "[i]n Maryland, a motion for judgment, made at the close of an opponent's case and thereafter denied, is withdrawn when the party making the motion offers evidence in its own case-in-chief. But, after offering evidence, the motion may be re-offered or renewed." Gen. Motors Corp. v. Seay, 388 Md. 341, 351, 879 A.2d 1049, 1055 (2005) (citation omitted). See also Md. R. 2-519(c) ("A party who moves for judgment at the close of the evidence offered by an opposing party may offer evidence in the event the motion is not granted . . . . In doing so, the party withdraws the motion."). In this case, after the motion for judgment made at the close of Mr. Blair's estate's case was denied as to the civil assault and excessive force claims, Officer Austin offered evidence, and, at the close of evidence, renewed the motion for judgment. Thus, in offering evidence, Officer Austin essentially withdrew the motion for judgment made at the close of Mr. Blair's estate's case, and the denial of the renewed motion for judgment made at the close of evidence was what was before the Court of Special Appeals for review.

[2]Lack of excessive force is an element of perfect self-defense, see Porter v. State, 455 Md. 220, 234-35, 166 A.3d 1044, 1053 (2017), which is a defense to a claim for assault, see Richardson v. McGriff, 361 Md. 437, 453, 762 A.2d 48, 56 (2000).

the evidence. See J. Hotten Slip Op. at 16, 19-20. However, the first motion for judgment, made at the close of Blair's estate's case, was effectively withdrawn when the circuit court denied the motion as to the claims for excessive force and assault and Officer Austin offered evidence. See Md. R. 2-519(c); Gen. Motors Corp. v. Seay, 388 Md. 341, 351, 879 A.2d 1049, 1055 (2005). There is no need for the opinion to review the denial of the motion for judgment made at the close of Blair's estate's case, as that motion was superseded when Officer Austin renewed the motion for judgment at the close of the evidence. In its opinion, the Court of Special Appeals did not state that it reviewed multiple motions for judgment. The Court of Special Appeals's decision and the petition for a writ of *certiorari* concerned only the question of whether "the circuit court [] erred in denying [Officer] Austin's motion for judgment." David Austin v. Estate of Jeffrey Blair by Personal Representative Tiauna Blair, No. 580, Sept. Term, 2017, 2019 WL 1873495, at *2 (Md. Ct. Spec. App. Apr. 25, 2019) (footnote omitted).

The Court of Special Appeals was wrong to find error in the circuit court's denial of Officer Austin's motion for judgment. An appellate court reviews without deference a trial court's ruling on a motion for judgment. See Sugarman v. Liles, 460 Md. 396, 413, 190 A.3d 344, 353 (2018). The question that is before the appellate court is not whether the jury's verdict was correct, or whether the jury assessed the case's merits correctly; rather, the question is whether the trial court was correct in determining that there was, or was not, sufficient evidence to submit the case to the jury. At a jury trial, there is a high bar for granting a motion for judgment. The trial court must "consider all evidence and inferences in the light most favorable to the party against whom the motion is made"—*i.e.*,

3

the plaintiff or counter-plaintiff.  Md. R. 2-519(b).

Officer Austin was not entitled to judgment as a matter of law because there was more than sufficient evidence to submit to the jury the claims for excessive force and assault.  Specifically, Mr. Blair's estate called as a witness Tyrone Powers, Ph.D., who had been a Maryland State Trooper for approximately four years, had been a special agent of the Federal Bureau of Investigation for approximately ten years, and had served as a consultant for numerous law enforcement organizations and administrators.  The circuit court admitted Dr. Powers as an expert in, among other fields, use of force.  Dr. Powers testified that it was unreasonable for Officer Austin to use deadly force by firing his gun at Mr. Blair.  As Judge Hotten writes, Dr. Powers's expert opinion generated an issue for the jury to decide as to excessive force and assault.  See J. Hotten Slip Op. at 21-22.  The weight to which Dr. Powers's expert opinion was entitled—as well as the weight that was to be given to the expert opinion of Charles "Joe" Key, Officer Austin's expert witness— were for the jury, not the circuit court or an appellate court, to determine.

As to the First Circuit's holding in Roy v. Inhabitants of the City of Lewiston, 42 F.3d 691 (1st Cir. 1994), contrary to the Dissent, see Dissent Slip Op. at 9-10 n.3, it would not be accurate to conclude that the case supports the proposition that "the specific [expert] testimony here is not relevant" in the objective reasonableness inquiry.[3]  In Roy, id. at 693-

---

[3]That said, the dissenting opinion makes an apt observation that Judge Hotten's opinion relies upon circumstances that are not relevant to review of the circuit court's denial of the motion for judgment.  See Dissent Slip Op. at 12-13.  But, within Judge Hotten's opinion is the basic holding, consistent with Judge Berger's dissent in the Court of Special Appeals, that there was sufficient evidence, *i.e.*, a *prima facie* case, concerning

4

94, 695-96, in reviewing the trial court's grant of summary judgment in favor of the defendants (officers, the city, and the police chief), the First Circuit fully considered the plaintiff's expert witness's anticipated testimony, as set forth in an affidavit, and determined that the testimony would not have affected the determination as to whether the officers' use of force was reasonable. There were no competing experts offering different views. And, the plaintiff's expert's proposed testimony hinged on the opinion that the officers could have acted differently if they had adequate training and equipment (a noxious spray that they did not have). See id. at 694, 696. The First Circuit discounted the expert's testimony and concluded that it was not obvious that retreating was an option because that would have left an armed man able to hurt the public. See id. at 696. There is no basis for the conclusion that the First Circuit held or suggested that an appellate court should not include or consider expert witness testimony in an analysis of objective reasonableness in excessive force cases. As such, it is a reach to suggest that an appellate court can review the grant or denial of a motion for summary judgment—or, as here, a motion for judgment—and not consider expert testimony. Moreover, in stating that, "in close cases, a jury does not automatically get to second-guess [] life and death decisions, even though the plaintiff has an expert and a plausible claim that the situation could better have been handled differently[,]" the First Circuit was discussing substantive liability and qualified

excessive force for submission to the jury. From my perspective, the Dissent goes too far in concluding that Dr. Powers's expert testimony should not have been considered by the circuit court and the Court of Special Appeals in assessing Officer Austin's motion for judgment. See Dissent Slip Op. at 9-10 n.3. And, the concern with Judge Hotten's opinion is not that it reaches the wrong result, but that the opinion muddies the waters about the issue that is before the Court and how to resolve it.

5

immunity in excessive force cases, not whether expert testimony could or should be considered. Id. at 695.

Also, in Roy, id. at 693, the facts were undisputed; indeed, the First Circuit noted that, in opposing summary judgment, the plaintiff did not contradict the events and agreed that he had knives and made the movement in question. Rather, the plaintiff alleged only that he did not intend to hurt the officers and was seeking to put down the knives. See id. By contrast, in this case, the facts and inferences to be drawn from the facts are disputed. For example, there is a question of whether one shot was sufficient to subdue Blair, and there is a question of whether Officer Austin gave commands to stop and if they were sufficient to warn of ensuing force used by the officer. Roy does not stand for the proposition that, where there is an issue of whether multiple shots were necessary to subdue a perceived threat or whether a warning was given as alleged, a trial court or appellate court may make that factual determination.

The issue of whether Officer Austin's use of deadly force was reasonable was a factual matter, see, e.g., King, 636 F.2d at 71, which heavily depended on the circumstances of which Officer Austin was aware when he shot Mr. Blair. The video from the surveillance camera lacks audio, and thus does not make clear what, if anything, Officer Austin and Blair said to each other in the moments leading up to the shooting. Notably, at trial, Officer Austin did not rely exclusively on the video, or contend only that the video spoke for itself, or that the video, without more, established that there was no excessive force. To the contrary, Officer Austin offered into evidence multiple documents that were part of Mr. Blair's medical records, called an expert witness, and testified about his

6

encounter with Mr. Blair.[4]  Specifically, Officer Austin testified that he told Mr. Blair "to go back to his car" and yelled "Stop" and "Don't do it" at Mr. Blair multiple times.  Because the video did not include audio, the video could not be used to confirm or deny the accuracy of this aspect of Officer Austin's testimony.  It was up to the jury to determine whether Officer Austin's testimony about what he said to Mr. Blair was credible, and, if so, whether Officer Austin's warnings to Mr. Blair were sufficient to preclude a finding of excessive force.

In the same vein, although it was clear that Officer Austin fired his gun four times, and that Mr. Blair received gunshot wounds to his torso, right hand, and scalp, it was unclear in what order Mr. Blair received those gunshot wounds, and whether one shot would have been sufficient to disable Mr. Blair and end any threat to Officer Austin.  As the circuit court aptly observed, the video of the traffic stop—i.e., the recording from a surveillance camera—did not resolve the factual question "as to exactly when Officer Austin fired his weapon."  Contrary to the position of Officer Austin and the Court of Special Appeals, see Austin, 2019 WL 1873495, at *3, the video did not establish all of the facts necessary to resolve the issue of excessive force.

By relying on its own interpretation of the video and independently resolving the

_____

[4]Although the existence of the medical records was obviously not known to Officer Austin at the time that he shot Mr. Blair, Officer Austin contended at trial that Mr. Blair appeared to be dangerous and that Mr. Blair seemed to want to kill him.  The medical records were offered by Officer Austin in an attempt to confirm that his (Officer Austin's) observations about Mr. Blair at the time of the shooting were correct.  Although an officer's subjective beliefs do not govern the excessive force determination, an objective reasonableness inquiry does not discount the officer's observations of the incident or the circumstances as they appeared to the officer.

question of whether Officer Austin's use of deadly force was reasonable, see id. at *1, the Court of Special Appeals substituted its view of the evidence for the jury's, and essentially acted as a second jury in deciding factual matters and the merits of the case. Such an analysis would be unwarranted under any circumstances, but, here, the Court of Special Appeals's independent determination of the facts of the case is particularly troubling when the only issue that the Court purported to address was whether the circuit court erred in denying the motion for judgment. The issue that was before the Court of Special Appeals required only a determination of whether the circuit court was correct in concluding that, viewing the evidence and the inferences that were to be drawn therefrom in the light that was most favorable to Mr. Blair's estate, see Md. R. 2-519(b), there was sufficient evidence for the jury to determine Officer Austin's liability for excessive force and assault, see Sugarman, 460 Md. at 412-13, 190 A.3d at 353. Plainly, Mr. Blair's estate produced sufficient evidence, especially considering Dr. Powers's expert testimony, to produce for the jury a question as to excessive force.

The Court of Special Appeals was incorrect in determining that independently interpreting the video was appropriate based on the Supreme Court's holding in Scott v. Harris, 550 U.S. 372 (2007). See Austin, 2019 WL 1873495, at *3. I agree that Scott does not control the disposition of this case. See J. Hotten Slip Op. at 22-23. Scott, 550 U.S. at 378, involved an appeal from a denial of summary judgment, which is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Md. R. 2-501(a). The Supreme Court clearly decided the issue of whether the officer was entitled to

8

summary judgment through use of video evidence. See Scott, 550 U.S. at 379-80. The Supreme Court noted that, in the context of deciding a motion for summary judgment, when one party provides a version of the events that is clearly contradicted by the record (*i.e.*, in Scott, the video evidence), a court need not adopt that party's version of the events in deciding a motion for summary judgment. See id. at 380. The Supreme Court stated:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. As we have emphasized, when the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[.] Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Id. (cleaned up).

The Supreme Court's holding in Scott is in no way transferable to the use that the Court of Special Appeals made of it. The Supreme Court's holding does not mention, or even hint, that, in reviewing the trial court's denial of a motion for judgment, an appellate court may review a video, disregard other evidence produced at trial, and reach a determination about the existence of excessive force based solely on its review of the video. Although it has been said the standards for granting a motion for summary judgment and a motion for judgment are "analogous[,]" or similar, the considerations by the trial court are different. Pittman v. Atl. Realty Co., 359 Md. 513, 537, 754 A.2d 1030, 1043 (2000) ("The test under Maryland law for determining whether no triable issue of fact is presented on

9

summary judgment is highly analogous to whether a motion for judgment should be granted in a case tried to a jury." (Citations omitted)). See also Berkey v. Delia, 287 Md. 302, 305, 413 A.2d 170, 171 (1980) ("We have observed that the function of the trial [court] on [] a motion [for summary judgment] is much the same as that which [the trial court] performs at the close of all the evidence in a jury trial when a motion for a directed verdict or a request for peremptory instructions makes it necessary that [the trial court] determine whether an issue requires resolution by a jury or may be decided by the court as a matter of law." (Citations omitted)).

The two types of motions share the circumstance that the moving party claims to be entitled to judgment as a matter of law, as well as the principle that the trial court must consider the facts/evidence and reasonable inferences in the light most favorable to the non-moving party. See Md. R. 2-501(a); de la Puente v. Cty. Comm'rs of Frederick Cty., 386 Md. 505, 510, 873 A.2d 366, 369 (2005); Sugarman, 460 Md. at 412-13, 190 A.3d at 353. But, a determination of the motions differs in that granting a motion for summary judgment depends on whether there is "a genuine dispute of material fact," whereas the granting a motion for judgment depends on whether there is sufficient evidence for the jury to find in the plaintiff's favor. In deciding a motion for summary judgment, a trial court considers the documents, affidavits, and/or exhibits that may be filed with the court in support of the motion. Generally, by definition, there has only been discovery, as there has not yet been a trial. As such, there is no "evidence" or "testimony" for the trial court to consider. By contrast, in deciding a motion for judgment at the conclusion of the evidence in the case, the trial court must consider all of the evidence (*i.e.*, exhibits and testimony)

10

that was adduced at trial—regardless of whether the evidence consists of video evidence, lay and expert witness testimony, or other types of exhibits. I would not conclude that, because the Supreme Court, in <u>Scott</u>, reviewed a decision with respect to a motion for summary judgment, and, based on information submitted in support of the motion, considered an item that consisted of a video, an appellate court in assessing the denial of a motion for judgment may review video evidence to the exclusion of other evidence in the case and make a factual determination concerning the outcome of the case.

Importantly, in <u>Scott</u>, the Supreme Court did not indicate that either party had retained an expert witness, much less that there were dueling expert opinions. By contrast, here, at trial, each of the parties called an expert witness who offered opposing opinions regarding whether Officer Austin's use of force was reasonable. In sum, the Supreme Court's decision in <u>Scott</u> was not an indication that, in all instances, regardless of other evidence, appellate courts may review videos of police encounters with civilians, assess such videos' contents, and determine whether the videos establish sufficient facts to show excessive force.

Under the Court of Special Appeals's holding, an appellate court would be free to independently review a video and determine that a case should not have been submitted to a jury, irrespective of other evidence, such as trial exhibits and lay witness and expert witness testimony. From my perspective, in assessing a motion for judgment, regardless of whether the case involves video evidence, a court should determine whether, considering

11

all of the evidence and inferences in the light most favorable to the nonmoving party, there is evidence from which a reasonable juror could find the elements of the tort.[5]

There is no need, as the Court of Special Appeals did, to determine a different standard for deciding and reviewing a motion for judgment where video evidence is involved, and the Supreme Court's holding in <u>Scott</u> does not authorize courts to make such a change. In excessive force cases involving videos, in reviewing the grant or denial of a motion for judgment, an appellate court must consider without deference all of the evidence in the case in the light most favorable to the non-moving party to determine whether a party has generated a sufficient question for the jury, and not merely review video evidence to independently determine the reasonableness of a law enforcement officer's actions.

The Honorable Stuart R. Berger deserves to be commended for his "well-reasoned dissent[.]" J. Hotten Slip Op. at 23. Judge Berger hit the nail on the head in stating: "It is not our role to opine on the correctness of the jury's decision, but to determine whether the Estate established a *prima facie* case of excessive force." <u>Austin</u>, 2019 WL 1873495, at *14 (Berger, J., dissenting).

With certainty, factual matters are for juries, not appellate courts, to determine. As technology becomes more prevalent in day-to-day life, issues involving its use will also become more prevalent in trials. Video recordings, audio recordings, and images from social media websites will be offered as evidence more frequently as time goes on.

---

[5]That said, this is not to suggest that there are no circumstances under which a trial court in assessing a motion for judgment, in a case where video evidence is involved, may determine that a plaintiff has not established a *prima facie* case and grant the motion, if the video evidence is unambiguous and there is no other evidence to the contrary.

Although an appellate court may be tempted to believe that it is in just as good a position as a jury to assess the weight of such evidence, the jury's province must remain sacrosanct, and an appellate court must not usurp the jury's role, no matter what type of evidence a case involves.  I would conclude that we cannot allow an appellate court to substitute its interpretation of video evidence—or any evidence, for that matter—for the jury's, and, I would not put a "crack in this bedrock" principle and dispense with the long-recognized standard of review of a motion for judgment.  Austin, 2019 WL 1873495, at *1.

Circuit Court for Baltimore City
Case No. 24-C-15-007117
Argued: December 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 35

September Term, 2019
_____

ESTATE OF JEFFREY BLAIR BY
PERSONAL REPRESENTATIVE
TIAUNA BLAIR

v.

DAVID AUSTIN
_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Battaglia, Lynne A. (Senior
Judge, Specially Assigned),

JJ.
_____

Dissenting Opinion by Getty, J,
which Booth and Battaglia, JJ., join.
_____

Filed: June 2, 2020

[T]he term reasonableness is used in different ways in different contexts; and in this one—the use of deadly force by the police in dangerous situations—the Supreme Court has allowed more latitude than might be customary in a simple tort case . . . .

*Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 696 (1st Cir. 1994).

In mere seconds, an individual who led police on a mile-long pursuit suddenly stopped his vehicle, exited, and charged directly at a police officer. In that "tense, uncertain, and rapidly evolving" situation, the officer swiftly backpedaled and commanded the individual to stop before ultimately discharging four rounds from his firearm. *Graham v. Connor*, 490 U.S. 386, 397 (1989). We must now determine whether, under the Supreme Court's test set out in *Graham* and its progeny, the officer's conduct is "objectively reasonable." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Because Judge Hotten's analysis exhibits the hallmarks of armchair reflection from the peace of a judge's chambers, focuses on evidence that has no bearing on the reasonableness inquiry, and neglects to engage with meaningful federal case law interpreting *Graham*, I respectfully dissent.

When a party moves for judgment, a circuit court "must determine if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fund for Animals, Inc.*, 451 Md. 431, 457 (2017) ("*Nat'l Union Fire*") (quoting *Thomas v. Panco Mgmt. of Md., LLC*, 423 Md. 387, 394 (2011)). As this Court has long observed, "[t]he words 'legally sufficient' have

significance. They mean that a party who has the burden of [proof] . . . cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture[;] . . . such evidence must be of legal probative force and evidential value." *Cavacos v. Sarwar*, 313 Md. 248, 259 (1988) (quoting *Fowler v. Smith*, 240 Md. 240, 247 (1965)).

The circuit court must, in a light most favorable to the non-movant, consider: (1) the evidence; and (2) reasonable inferences drawn from the evidence. *Sugarman v. Liles*, 460 Md. 396, 413 (2018). "[W]hen the 'facts and circumstances only permit one inference with regard to the issue presented,' . . . the issue is one of law for the court and not one of fact for the jury." *Thomas*, 423 Md. at 394 (quoting *Scapa Dryer Fabrics, Inc. v. Saville*, 418 Md. 496, 503 (2011)). "A judge must grant a civil defendant's motion for judgment as a matter of law if the plaintiff failed to present evidence that could persuade the jury of the elements . . . by a preponderance of the evidence." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 270 (2004) (emphasis omitted). On review of a motion for judgment,[1] an appellate court conducts the same analysis as the circuit court, but without

---

[1] I agree with Judge Watts' concurring opinion with respect to appellate review of a motion for judgment under Maryland Rule 2-519. *See* Judge Watts' Slip Op. at 1 n.1, 3. Specifically, I agree that "[t]here is no need for [Judge Hotten's] opinion to review the denial of the motion for judgment made at the close of Blair's estate's case, as that motion was superseded when Officer Austin renewed the motion for judgment at the close of the evidence." Judge Watts' Slip Op. at 3. Therefore, my analysis only focuses Officer Austin's renewed motion for judgment at the close of all the evidence.

On a separate note, I also agree with Judge Watts' analysis regarding the Court of Special Appeals' improper reliance on *Scott v. Harris*, 550 U.S. 372 (2007). *See* Judge Watts' Slip Op. at 8–12.

deference. *Nat'l Union Fire*, 451 Md. at 457; *District of Columbia v. Singleton*, 425 Md. 398, 406–07 (2012).

In my view, a defendant-officer's motion for judgment in an excessive force case requires the circuit court to make the following threshold determination. The circuit court must determine if the evidence, viewed in a light most favorable to the plaintiff, removes the officer's conduct from a range of objective reasonableness, as that standard has been articulated by the Supreme Court and lower federal courts. If the plaintiff produces evidence that the officer's conduct could be deemed objectively *un*reasonable—i.e., outside that range of reasonableness—then the plaintiff has generated a factual question fit for submission to a jury. However, if the evidence, even when viewed in a light most favorable to the plaintiff, "only permit[s] one inference," that the officer's conduct is within the spectrum of objective reasonableness, then the circuit court is presented with an issue of law and it must enter judgment. *Nat'l Union Fire*, 451 Md. at 457 (quoting *Thomas*, 423 Md. at 394).

Put another way, the burden is on the plaintiff to demonstrate that an officer's actions are so egregious that they are removed from the range of objective reasonableness articulated by the Supreme Court. When the plaintiff fails to present evidence satisfying this burden, and the evidence viewed in a light most favorable to the plaintiff demonstrates reasonable conduct, as here, the matter is not for a jury and the motion for judgment should be granted.

To survive a motion for judgment, the Estate needed to demonstrate that Officer Austin acted in an objectively unreasonable manner.[2]  The Estate failed to do so.  Judge Hotten's opinion highlights select portions of evidence admitted at trial to reach its conclusion that Officer Austin used excessive force, but the evidence upon which it relies has no bearing on the reasonableness inquiry.  When such improper evidence is removed from the reasonableness calculus, it becomes clear that the Estate failed to show that Officer Austin acted in an objectively unreasonable manner.  Therefore, the motion for judgment should have been granted.

**A.**     ***The Analytical Framework in an Excessive Force Claim Focuses Only on the Objective Reasonableness of an Officer's Conduct.***

The Supreme Court's seminal decision in *Graham v. Connor* made clear that claims against a police officer's alleged use of excessive force are judged in light of the Fourth Amendment.  490 U.S. at 395  (holding that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").  The inquiry, like others in the Fourth Amendment context, "is an objective one: the question is whether the officer['s] actions

---

[2] Judge Hotten suggests that the circuit court's denial of Officer Austin's motion for judgment "establish[ed] that the Estate satisfied its burden of production." Judge Hotten's Slip Op. at 16.  However, the circuit court's ruling on the motion cannot, and does not, conclusively establish anything because we review the circuit court's ruling without deference. *Nat'l Union Fire*, 451 Md. at 457; *Singleton*, 425 Md. at 406–07.

4

are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

While *Graham* arose in the context of a 42 U.S.C. § 1983 claim for violation of a Federal Constitutional right, the same standard is applicable to alleged uses of excessive force in violation of Articles 24 or 26 of the Maryland Declaration of Rights. *Richardson v. McGriff*, 361 Md. 437, 452 (2000); *see also Randall v. Peaco*, 175 Md. App. 320, 330 (2007) ("[A] claim of excessive force brought under Article 24 is analyzed in the same manner as if the claim were brought under Article 26."). As we said in *Okwa v. Harper*, "when a right protected under Maryland's Constitution is also secured under a companion provision of the U.S. Constitution, Maryland courts often have looked to federal cases interpreting the parallel federal provision." 360 Md. 161, 202–03 (2000) (collecting cases). As such, we have long interpreted the protections guaranteed by Article 26 in light of the Fourth Amendment. *Richardson*, 361 Md. at 452. It follows, then, that "decisions of the Supreme Court interpreting the Federal right are entitled to great respect in construing the State counterpart." *Id.* at 453.

To preface the objective reasonableness inquiry, we begin with the oft-quoted language from *Graham*: "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' . . . its proper

application requires careful attention to the facts and circumstances of each particular case. . . ." *Id.* (internal citation omitted). The quantum of force employed must be weighed against these considerations: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The question then becomes "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Garner*, 471 U.S. at 8–9.

The *Graham* Court continued, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer *on the scene, rather than with the 20/20 vision of hindsight*." 490 U.S. at 396 (emphasis added). Properly analyzed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

This, Judge Hotten's opinion contends, is the governing framework through which to analyze this case. While I agree that it is the foundation of such a framework, there also exists a robust body of case law from the federal courts applying *Graham*. These cases—indeed, *Graham*'s progeny—further refine the "objective reasonableness" standard in the context of an excessive force claim. While Judge Hotten's opinion overlooks federal cases analyzing excessive force claims, I find them enlightening. The Eighth Circuit has summarized additional aspects of the objective reasonableness inquiry rather well:

6

> The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively "reasonable" under the Fourth Amendment. Alternative measures which 20/20 hindsight reveal to be less intrusive (or more prudent) . . . are simply not relevant to the reasonableness inquiry.

*Schulz v. Long*, 44 F.3d 643, 649 (8th Cir. 1995).

When an officer employs deadly force, the reasonableness inquiry "is simply whether 'the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Id.* (quoting *Garner*, 471 U.S. at 3); *see also Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) ("A police officer may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others."). "Officers *need not be absolutely sure*, however, of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self[-]protection." *Elliott*, 99 F.3d at 644 (emphasis added).

An officer's use of deadly force tends more toward a finding of reasonableness if: (1) "the suspect poses an immediate threat of serious physical harm to officers or others"; (2) "the suspect committed a crime involving the infliction or threatened infliction of serious harm"; (3) "the officers either issued a warning or could not feasibly have done so before using deadly force"; and (4) "the officer 'had [an] articulable basis to think [the suspect] was armed.'" *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) (quoting *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010); *Garner*, 471 U.S. at 20).

7

An officer's subjective motivations behind a chosen use of force is simply irrelevant. *Graham*, 490 U.S. at 397 (noting that the reasonableness inquiry is conducted "without regard to [an officer's] underlying intent or motivation"); *see also Elliott*, 99 F.3d at 642 ("[T]he question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force."). Moreover, a court's review of the officer's decision to use deadly force is limited to "'the information that [the officer] possessed at the time of his decision' to use such force." *Schulz*, 44 F.3d at 648 (alteration in original) (quoting *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1994)); *see also Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1995) (noting that a court will "scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment" (quoting *Cole*, 993 F.2d at 133)).

In *Roy v. Inhabitants of the City of Lewiston,* two police officers of the Lewiston, Maine Police Department were dispatched to investigate a report of domestic violence. 42 F.3d at 693. Upon arrival, the officers learned that Roy was intoxicated, armed with two knives, and had threatened to harm any police officer who approached him. *Id.* A third officer arrived and made contact with an unarmed Roy. *Id.* Displeased with the interaction, Roy entered his home and reemerged with two knives. *Id.* The officers drew their firearms and ordered Roy to drop the knives; however, Roy advanced toward the officers. *Id.* The officers stepped away, retreating "back to a sharp downward incline." *Id.* The officers' repeated warnings and attempted to distract and disarm Roy, which proved unsuccessful. *Id.* Ultimately, Roy made a "kicking-lunging motion" toward two of the officers, one of whom shot and struck Roy twice. *Id.* Roy recovered and instituted a 42 U.S.C. § 1983

8

action alleging that "the three police officers had unreasonably used deadly force," and that the officers were not adequately trained "in non-lethal alternatives for subduing dangerous but intoxicated persons." *Id.*

The First Circuit began its discussion by noting that "[j]udgments about reasonableness are usually made by juries in arguable cases, even if there is no dispute about what happened." *Id.* at 694. However, and notably for our purposes, "the facts might point so clearly toward reasonableness that no reasonable jury could decide for the plaintiff." *Id.* The *Roy* court's approach underscores that "the Supreme Court's standard of reasonableness is comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present." *Id.* at 695.

Referring to *Graham*, the First Circuit further observed that "the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases." *Id.* Therefore, "*in close cases, a jury does not automatically get to second-guess these life and death decisions*, even though the plaintiff has an expert and a plausible claim that the situation could better have been handled differently."[3] *Id.* (emphasis added).

_____

[3] Judges Hotten and Watts rely on the testimony of the Estate's expert, Dr. Powers. *See* Judge Hotten's Slip Op. at 19–21; Judge Watts' Slip Op. at 4. I disagree with their reliance for two reasons. First, Officer Austin moved in *limine* to exclude Dr. Powers' testimony on the grounds that he would opine on a legal question, but the circuit court denied the motion. Officer Austin renewed the objection when Dr. Powers arguably testified to a question of law. Officer Austin presented this and other issues to the Court of Special Appeals, but that court did not need to reach these questions because it reversed the circuit court on Officer Austin's first contention of error—i.e., the erroneous denial of the motion for judgment. *Austin v. Blair*, No. 580, Sept. Term, 2017, 2019 WL 1873495, at *2 n.3

9

Under the facts presented in *Roy*, and the law set out in *Graham*, the First Circuit

concluded that

(Md. Ct. Spec. App. Apr. 25, 2019). Judge Hotten neglects to address Officer Austin's arguments on this point; however, I would conclude that Dr. Powers' testimony should have been excluded. Therefore, the testimony should not be considered in the objective reasonableness inquiry.

"[I]t is the general rule that an expert witness may not opine on questions of law." *Solomon v. State Bd. of Physician Quality Assurance*, 155 Md. App. 687, 706 (2003); s*ee also Franceschina v. Hope*, 267 Md. 632, 642 (1973) ("*Shivers* [*v. Carnaggio*, 223 Md. 585 (1960)] should not be interpreted to mean that an expert witness may in his opinion on the facts include an opinion on a matter of law."); Md. Rule 5-702 ("Expert testimony may be admitted . . . if the court determines that the testimony will assist the trier of fact to . . . determine a *fact* in issue." (emphasis added)). Yet, Judge Hotten directly quotes Dr. Powers' testimony on the very question of law at issue in the motion for judgment: whether Officer Austin's actions were objectively reasonable. *See* Judge Hotten's Slip Op. at 4 (noting Dr. Powers' testimony that "Austin's use of deadly force—firing his [weapon]— breached this standard"). Because Dr. Powers' testimony was not the proper subject of expert testimony and embraced a question of law, it should have been excluded at trial. Therefore, it is not properly included in the objective reasonableness inquiry.

Second, even if Dr. Powers' testimony were properly admitted, I would not consider it for reasons well stated by the Majority below:

> [A]n expert's interpretation of facts does not materially alter them. Powers' testimony relied on paused images from the video to review, frame by frame, the distance between Austin and Blair, the movements they both made, and the precise location of Blair's hands. But as the events were unfolding in real time, Austin did not have the option to pause Jeffrey Blair.

*Austin*, 2019 WL 1873495, at *4 n.4. The reasonableness of an officer's actions is not judged "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Instead, expert testimony of the sort Dr. Powers provided is little more than a window into how "the situation could better have been handled differently." *Roy*, 42 F.3d at 695. I do not purport to argue that *Roy* stands for the proposition that expert testimony may *never* be relevant in the objective reasonableness inquiry, *see* Judge Watts' Slip Op. at 4, only that the specific testimony here is not relevant to the inquiry.

10

[p]erhaps a jury could rationally have found that [the officer] could have done a better job; but in our view a jury could not find that his conduct was *so deficient that no reasonable officer could have made the same choice* as [the officer]—in circumstances that were assuredly "tense, uncertain, and rapidly evolving." Put differently, [the officer's] actions, even if mistaken, were not unconstitutional.

*Id.* at 695–96 (citation omitted and emphasis added).[4]

**B.** ***Judge Hotten's Analysis of Officer Austin's Conduct Focuses on Evidence that has No Bearing on the Reasonableness Inquiry.***

Turning to the instant matter, Judge Hotten's opinion attempts to cobble together a case that Officer Austin exceeded an objectively reasonable level of force by relying on information that is inapposite to the Fourth Amendment reasonableness inquiry. Paring away the improperly considered evidence reveals that the Estate failed to present legally

---

[4] Judge Watts' seeks to distinguish *Roy* because of disputed facts in the record. However, as I explain *infra* 11–20, the "disputed" facts are not pertinent in the objective reasonableness inquiry; likewise, they do generate an issue of fact fit for submission to the jury. *See* Judge Watts' Slip Op. at 6. To be sure, Judge Watts questions (1) "whether one shot was sufficient to subdue Blair"; (2) "whether the tasing on the ground was necessary"; and (3) "whether Officer Austin gave commands to stop and if they were sufficient to warn of ensuing force used by the officer."

First, the number of shots fired is not dispositive of excessive force, especially where an officer exercises restraint in shooting, because officers may justifiably shoot until the threat ceases to exist. *See infra* 16–17. Second, the use of a taser cannot be considered against Officer Austin in the instant excessive force inquiry. Officer Austin did not carry a taser; another responding officer deployed that method of force. *See* Judge Hotten's Slip Op. at 3, 21. The officer that deployed the taser is not a defendant here. Imposing that use of force on Officer Austin would be improper. Third, whether Officer Austin gave verbal warnings is not determinative of whether the force used was reasonable or unreasonable. While a "suspect ordinarily must be warned . . . before a police officer may use deadly force," this is so "when a warning is feasible." *Conlogue v. Hamilton*, 906 F.3d 150, 156 (1st Cir. 2018). To the extent these facts are in dispute, they do not negate the application of *Roy*.

11

sufficient evidence showing that Officer Austin exceeded the range of permissible, objectively reasonable conduct.  I shall address each in turn.

*1.     Subjective Motivation & Police Training.*

Judge Hotten's opinion cites Officer Austin's testimony that "he used deadly force to maintain distance between Mr. Blair and himself, not to protect himself, the public, or other law enforcement officers and not because he believed himself, the public, or other law enforcement officers to be in danger of death or serious physical harm."  Judge Hotten's Slip Op. at 21–22.  Moreover, Judge Hotten's opinion contends, because Officer Austin was "trained to [maintain physical distance] by using non-lethal means," he exceeded a level of objectively reasonable force by choosing "to use a lethal weapon."  Judge Hotten's Slip Op. at 22.

An officer's subjective motivations have no place in determining whether an officer's use of force is objectively reasonable.  *See Graham*, 490 U.S. at 397 ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.");  *Elliott*, 99 F.3d at 642 ("The intent or motivation of the officer is irrelevant.").  Given that our test is clearly objective, Officer Austin's testimony about his subjective motivation as to why he used deadly force makes no difference to our analysis.

Likewise, general assertions that an officer failed to act in accordance with department policy and training are misplaced.  *Greenidge v. Ruffin*, 927 F.2d 789, 791–92 (4th Cir. 1991) (rejecting arguments that an officer's "misconduct of failing to comply with

12

the standard police procedures" factored into the reasonableness inquiry). Judge Hotten's opinion suggests that "an objectively reasonable officer would adhere to proper law enforcement guidelines and policies, or else render said guidelines and policies meaningless." Judge Hotten's Slip Op. at 21. Yet, crucially in an excessive force analysis, "the issue is whether the government official violated the Constitution . . . , *not whether he violated the policies of a state agency*." *Cole*, 993 F.2d at 1334 (emphasis added); *see also Richardson*, 361 Md. at 458 (declining to consider an officer's decision not to wait for additional backup, in violation of "police guideline or regulation," in the objective reasonableness inquiry). Because Officer Austin's conduct is not judged against the policy, procedures, or training of the Baltimore City Police Department,[5] the notion that he failed to act in accordance with his training is irrelevant. Judge Hotten's contention—that Officer Austin should have reacted with non-lethal force consistent with his training—permeates her next argument that Officer Austin should have used less force.

2. *Proportionate Force.*

Judge Hotten's implicit argument that Officer Austin should have employed less force, or non-lethal force is similarly unpersuasive. "[T]he Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure *actually effectuated* falls within a range of conduct which is objectively 'reasonable' under the Fourth Amendment." *Richardson*, 361 Md. at 455 (emphasis added) (quoting *Schulz*, 44 F.3d at 649).

---

[5] We have recognized that "the Baltimore City Police Department is a state agency." *Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 28 (2008).

13

"Alternative measures which 20/20 hindsight reveal to be less intrusive (or more prudent) . . . are simply not relevant to the reasonableness inquiry." *Id.* (quoting *Schulz*, 44 F.3d at 649). Certainly, Officer Austin *could* have deployed non-lethal force in hopes that it would stop Mr. Blair. However, "[t]his suggestion that the officer[] might have responded differently is exactly the type of judicial second look that the case law prohibits." *Elliott*, 99 F.3d at 643. As such, it is irrelevant here.

Judge Hotten's opinion relies in part on *Garner* in an attempt to show that Officer Austin's use of deadly force is unreasonable. *See* Judge Hotten's Slip Op. at 18–19 (noting that because "'[a] police officer may not seize an unarmed, non[-]dangerous suspect by shooting him dead[,]' . . . an objectively reasonable officer would use deadly force *only* when threatened with serious physical harm"). This comparison fails. *Garner* involved a police officer shooting at a burglary suspect to prevent escape, despite the officer being "reasonably sure" the suspect was unarmed. 471 U.S. at 4. The officer surmised that "Garner was 17 or 18 years old and about 5'5" or 5'7"." *Id.* at 3. Moreover, the Court noted that the officer "could not reasonably have believed that Garner—young, slight, and unarmed—posed any threat." *Id.* at 21. Yet, the officer employed deadly force against Garner when the suspect was attempting to flee. *Id.* at 3.

The facts here are diametrically inconsistent with those in *Garner*. The most evident difference is that Mr. Blair charged directly at Officer Austin. Mr. Blair did not attempt to evade arrest or flee, like Garner. Another patent difference between these cases is that Officer Austin could not be "reasonably sure" that Mr. Blair was unarmed. Officer Austin had but *ten seconds* from the time Mr. Blair stopped his car to when Mr. Blair was within

14

an arm's reach to decide how to react to Mr. Blair's unprovoked show of aggression. Unlike in *Garner*, where the suspect was a "young, slight" teenager, Mr. Blair was an adult male, approximately six feet tall, and weighing between 230 and 250 pounds. To Officer Austin, "Mr. Blair appeared to be dangerous" and "seemed to want to kill him." Judge Watts' Slip Op. at 7 n.4. *Garner* simply cannot stand for the overly-broad proposition Judge Hotten's opinion urges. The only alternative reading of Judge Hotten's opinion on this point is that Officer Austin did not face serious physical harm, or else use of deadly force would be objectively reasonable. Despite such an attempt to diminish the threat to Officer Austin, Mr. Blair undeniably posed a serious threat to the officer's safety. *See infra* at 22.

Judge Hotten's reliance on Mr. Blair's lack of a weapon—unbeknownst to Officer Austin in the moment—is an "armchair reflection" of the worst sort; it is exactly the type "officers on the beat are not often afforded." *Elliott*, 99 F.3d at 642; *see also Dooley v. Tharp*, 856 F.3d 1177, 1182–83 (8th Cir. 2017) ("[L]aw enforcement officers are not afforded the opportunity of viewing in slow motion what appears to them to constitute life-threatening action."). Officer Austin had no chance to confirm that Mr. Blair was unarmed. Instead, before Mr. Blair exited the vehicle, Officer Austin observed Mr. Blair moving around his vehicle. Mere seconds elapsed between Mr. Blair's exit from the vehicle and the time he had charged at Officer Austin. Still, in that brief window of time, Officer Austin observed Mr. Blair put his hand in his waistband. Even, assuming for sake of argument that Mr. Blair was unarmed, his decision to charge directly at Officer Austin

15

posed a serious threat to the officer's safety. Nothing more is required to employ deadly force.

*3.     Number of Shots Fired.*

The number of bullets discharged by an officer's firearm is not determinative in the excessive force inquiry. *See Elliott*, 99 F.3d at 643 ("The number of shots by itself cannot be determinative as to whether the force used was reasonable."). Judge Hotten's opinion stresses the fact that Officer Austin fired "four separate shots" at Mr. Blair to purportedly show excessive force. Judge Hotten's Slip Op. at 19–20. In *Elliott*, the Fourth Circuit rejected a district court's "concern that the number of shots fired was excessive." 99 F.3d at 643. There, two police officers handcuffed and placed Elliott in a police cruiser on suspicion of driving while intoxicated. *Id.* at 641. Despite an officer's brief search of Elliott before placing him in the cruiser, Elliott pulled a small handgun from his person, put his finger on the trigger, and pointed it at the officers. *Id.* at 642. Realizing the imminent threat, "[b]oth officers fired almost simultaneously; neither officer emptied his firearm; and the evidence indicates that the shooting took place within a matter of seconds." *Id.* at 643.

Here, like in *Elliott*, Officer Austin had only moments to react, did not empty his firearm, and ceased fire in mere seconds. Officer Austin discharged four of his weapon's fifteen rounds; enough to temporarily subdue the threat of Mr. Blair charging at him. "That multiple shots were fired does not suggest the officers shot mindlessly as much as it indicates that they sought to ensure the elimination of a deadly threat." *Id.* at 643; *see also Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) ("[I]f police officers are justified in firing

16

at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended."). Judge Hotten's reliance on the number of shots Officer Austin discharged is, therefore, misplaced.[6]

*4.     Antecedent Events.*

Judge Hotten recounts events antecedent to Officer Austin's use of force to demonstrate that his actions were objectively unreasonable. *See* Judge Hotten's Slip Op. at 21. This Court has categorically rejected the notion that antecedent events—i.e., those events which occur before the "critical moment" when force is deployed—bear on the reasonableness of an officer's conduct. *Richardson*, 361 Md. at 459; *see also Randall*, 175 Md. App. at 335  (noting that this Court "squarely rejected the notion that the reasonableness of the use of lethal force must involve consideration of antecedent events that would at best involve a hindsight evaluation of the officer's conduct"). In *Richardson*, we based our decision on the view adopted by six federal appellate courts having addressed this issue. 361 Md. at 455; *see, e.g.*, *Greenidge*, 927 F.2d at 792 ("[E]vents which occurred

---

[6] As briefly discussed *supra* at 11 n.4, Judge Watts contends that the order of shots sustained by Mr. Blair has some bearing on reasonableness. To the contrary, Officer Austin was justified in shooting at Mr. Blair until the threat ended. It is implausible to expect that officers discharge a single round, pause to see if a threat is adequately subdued, and if not, discharge another single round (and repeat as many times as may be necessary). This is not to say that an officer may indiscriminately empty his weapon, but that an officer's reaction need not be so tempered as Judge Watts suggests.

17

before [an officer] opened the car door and identified herself to the passengers are not probative of the reasonableness of [the officer's] decision to fire the shot.").

*Richardson* warrants additional discussion. There, a police officer received a call of shots fired in a vacant apartment where several males were present. *Richardson*, 361 Md. at 442. The officer responded "and observed an open, vacant apartment, which was dark," but waited for another officer to arrive with a flashlight. *Id.* (Internal quotations omitted). The officers entered the apartment together and announced their presence. *Id.* at 443. While conducting a "room-to-room search" in the unlit apartment, the officers heard a "bump" come from a closet. *Id.* at 443–44. One officer "moved out of the line of possible fire" and prepared to open the closet door, while the other officer positioned himself to "see into the closet when the door was opened." *Id.* at 444. The latter officer "drew his pistol and aimed it at the center mast of the closet." *Id.* As the closet door opened, the officer's flashlight illuminated what the officer perceived as "a barrel of a big weapon" being lowered into a firing position. *Id.* The officer fired and struck Richardson. *Id.* Only after discharging the weapon did the officer discover that the item was a pipe. *Id.*

Against these facts, and having rejected the view that antecedent events factor into the reasonableness inquiry, the *Richardson* Court still considered where Richardson's arguments would lead. *Id.* at 459. We opined:

> Whether [the antecedent events] *in hindsight* could be regarded as negligent or imprudent, they existed and, at the crucial moment, could not be changed. At the moment [one officer] opened the closet door and [the second officer] saw what appeared to him to be an armed man lowering his weapon to firing position, *what was he to do?* Under [Richardson's] approach, [the second officer] would have been, at that split-second moment, faced with the impossible choice of either defending himself and, in so doing, risking

18

liability for any harm inflicted on [Richardson] because of past events or decisions that were then uncorrectable, or taking no defensive action and putting his life in immediate and mortal danger in order to save his pocketbook. The law cannot reasonably put officers in that situation.

*Id.*

Although *Richardson* involved an officer's antecedent conduct, the principle applies with equal force here. Mr. Blair's antecedent conduct—leading Officer Austin on a low-speed pursuit while committing a series of traffic violations—is inapplicable to the reasonableness inquiry. Indeed, "*Graham* requires us to focus on the moment force was used; conduct prior to that moment is not relevant in determining whether an officer used reasonable force." *Elliott*, 99 F.3d at 643. "The [Supreme] Court's use of the phrases 'at the moment' and 'split-second judgment' are strong indicia that the reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure." *Schulz*, 44 F.3d at 648; *Richardson*, 361 Md. at 454 (same). Therefore, Judge Hotten improperly relies on Mr. Blair's conduct before the actual encounter where Officer Austin employed force.[7]

---

[7] Judge Hotten refrains, rightfully so, from relying on Mr. Blair's medical records, history of mental illness, and suicidal ideations in the objective reasonableness analysis for the simple reason that Officer Austin did not know this information at the time of his encounter with Mr. Blair. *See* Judge Hotten's Slip Op. at 6 ("The record does not reflect . . . that Mr. Blair communicated this intent [to commit "suicide by cop"] to Officer Austin or that Officer Austin was otherwise cognizant of Mr. Blair's intention, or the existence of those medical records at the time of the incident.").

"'Suicide by cop' is a term used by law enforcement . . . to describe an incident in which an individual engages in behavior which poses an apparent risk of serious injury or death, with the intent to precipitate the use of deadly force by law enforcement personnel

Removing this evidence from the Fourth Amendment inquiry, the analysis into the reasonableness of Officer Austin's conduct becomes exceptionally straightforward.

## C. Because Officer Austin's Conduct was Objectively Reasonable, the Circuit Court Should Have Granted the Motion for Judgment.

Guided by *Graham* and its progeny, *supra* 4–11, and cognizant that this appeal stems from a motion for judgment, we consider whether the evidence demonstrates that Officer Austin's conduct is removed from a permissible range of objective reasonableness. I believe the Estate failed to present legally sufficient evidence to do so. Viewing the pertinent information in a light most favorable to the Estate, the evidence fairly demonstrates the following.

Mr. Blair failed to stop his vehicle after Officer Austin initiated his patrol car's emergency equipment. Mr. Blair ultimately brought his vehicle to a complete stop in a snowbank on the right side of a Baltimore City street.[8] Officer Austin stopped his patrol car behind Mr. Blair's vehicle and observed Mr. Blair reaching around the passenger side

---

towards that individual." Kris Mohandie & J. Reid Meloy, *Clinical and Forensic Indicators of "Suicide by Cop,"* 45 J. Forensic Sci. 384, 384 (2000).

Nonetheless, Judge Watts cites the medical records offered by Officer Austin at trial as part of a larger argument that the use of force was a factual issue for the jury. *See* Judge Watts' Slip. Op. at 6. I disagree, because none of this information was known to Officer Austin before (or during) the encounter and I would not rely on this information in the objective reasonableness calculus.

[8] As best I can tell, Mr. Blair brought his vehicle to a stop somewhere near the area of N. Fremont Avenue and Pitcher Street in Baltimore City. The parties' briefs are unclear as to the specific location, but refer to the video footage entered at trial as Defendant's Exhibit 5: "(Full) 1115-Freemont St – Pitcher St – 20150222-122800." So far as I am aware, "Freemont Street" is not the proper street name.

of the vehicle. Mr. Blair then opened the door on the driver's side of the vehicle, placed his feet on the ground, and quickly exited the vehicle. Mr. Blair appeared approximately six feet tall, 230 pounds, and empty-handed. Mr. Blair took three to four slow steps towards Officer Austin's patrol car. Officer Austin similarly exited his patrol car. Once Officer Austin stepped outside the patrol car, Mr. Blair charged directly in Officer Austin's direction. Mr. Blair quickly advanced to within an arm's length of Officer Austin before the officer started rapidly backpedaling. Mr. Blair followed. As Officer Austin passed the back end of his patrol car, running backwards, he drew his service weapon from its holster, aimed it at Mr. Blair and fired four shots. Officer Austin continued to back away as Mr. Blair fell to the ground. A matter of mere seconds elapsed from the time Mr. Blair stopped his vehicle to when Officer Austin concluded firing.

1.    *Factors for Consideration in Excessive Force Claims.*

As previously noted, *supra* at 7, determining whether a particular use of force is objectively reasonable involves a series of considerations.[9]

The first of these factors, and in my view, the preeminent factor in this analysis, is whether Mr. Blair "pose[d] an immediate threat of serious physical harm" to Officer Austin or others. *See Garner*, 471 U.S. at 8–9; *Salvato*, 790 F.3d at 1293. Mr. Blair undeniably posed a serious threat to Officer Austin's safety such that the use of force was necessary to protect the officer's life. Within a matter of mere seconds, and in a "tense, uncertain and

---

[9] While Judge Hotten's opinion mentions these factors in passing, it neglects to engage with meaningful discussion of the same. *See* Judge Hotten's Slip Op. at 18.

21

rapidly evolving" encounter, Mr. Blair exited his vehicle and charged directly at Officer Austin. *Graham*, 490 U.S. at 397.

The Fourth Amendment did not obligate Officer Austin to wait and see if Mr. Blair was, in fact, armed before resorting to deadly force; such a rule is untenable. *See id.* ("The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists."); *see also Long v. Slaton*, 508 F.3d 576, 581 (5th Cir. 2007) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect."). "The critical point . . . is precisely that [Mr. Blair] was 'threatening,' threatening the life[] of [Officer Austin.]" *Elliott*, 99 F.3d at 643. Indeed, the use of deadly force has been upheld as justifiable where an officer reasonably felt threatened, even "in a situation where he could not see the suspected weapon at all." *Id.* (citing *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991)).

Contrary to Judge Hotten's position, the circumstances presented to Officer Austin justified his use of deadly force. "[N]o court can expect any human being to remain passive in the face of an active threat on his or her life." *Id.* at 644. All that is required before an officer employs deadly force is that the officer "have sound reason to believe that the suspect poses a serious threat to their safety or the safety of others." *Id.*; *see also Garner*, 471 U.S. at 11 ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.").

Given that "[t]he touchstone of the Fourth Amendment is reasonableness," *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), an officer need not be omniscient. *Elliott*, 99 F.3d at 644. Indeed, "[o]fficers need not be absolutely sure . . . of the nature of the threat or the suspect's intent to cause them harm." *Id.* As here, where Officer Austin was not afforded the opportunity to confirm that Mr. Blair was unarmed, and where a physical fight would otherwise ensue, no more should be required of Officer Austin. That Mr. Blair posed a serious threat to Officer Austin made it objectively reasonable for Officer Austin to employ deadly force.

Second, we consider whether "the officers either issued a warning or could not feasibly have done so before using deadly force." *Salvato*, 790 F.3d at 1293. It is important to recall that, in reviewing a motion for judgment, this Court "assume[s] the truth of all credible evidence on the issue." *Barrett v. Nwaba*, 165 Md. App. 281, 290 (2005) (quoting *Moore v. Myers*, 161 Md. App. 349, 362 (2005)). Certainly, we are "not [privileged] to dissect the evidence and weigh the credibility of its messengers." *John Crane, Inc., v. Puller*, 69 Md. App. 1, 18 (2006). Judge Watts' opinion directly indicates credible evidence on this point: "Officer Austin testified that he told Mr. Blair 'to go back to his car' and yelled 'Stop' and 'Don't do it' at Mr. Blair multiple times." Judge Watts' Slip Op. at 7. Assuming the veracity of this evidence, Officer Austin made his warnings abundantly clear. Therefore, this factor tends toward the reasonableness of Officer Austin's actions.

The third consideration is whether "the officer 'had [an] articulable basis to think [the suspect] was armed.'" *Salvato*, 790 F.3d at 1293. Judge Hotten regards Mr. Blair as

23

an "unarmed civilian."[10] *See* Judge Hotten's Slip Op. at 19. While this fact became clear in the aftermath of the encounter, I do not agree that it is a fair characterization of the events as Officer Austin perceived them. Indeed, even crediting the Estate's account that Mr. Blair did not display a weapon, credible evidence existed that would have given Officer Austin reason to believe Mr. Blair may have been armed.[11] At a minimum, Officer Austin could not be sure of whether Mr. Blair possessed a weapon based on their limited interaction because Mr. Blair's conduct—exiting the vehicle and charging directly at the officer—prevented Officer Austin from conducting a protective frisk to determine that Mr. Blair was unarmed. Therefore, despite the lack of an articulable basis for believing Mr. Blair possessed a weapon, Officer Austin could not be expected to make a reliable determination on this point before choosing how to react to Mr. Blair.[12]

---

[10] Notably, Judge Hotten observes that "the video does not reveal Mr. Blair's actions inside his vehicle . . . [and the] video does not reflect whether Mr. Blair was armed." Judge Hotten's Slip Op. at 2. However, the video evidence need not demonstrate these facts because we accept credible evidence—such as Officer Austin's testimony—as true for purposes of appellate review.

[11] The record reveals that after Mr. Blair stopped his vehicle, but before exiting the same, he reached around the passenger side of his vehicle. This furtive movement, viewed together with Mr. Blair's failure to stop, could give Officer Austin reason to believe that Mr. Blair was looking for a weapon.

[12] We also consider the "severity of the crime at issue." *Garner*, 471 U.S. at 8–9. Officer Austin observed Mr. Blair commit several traffic infractions. *See* Judge Hotten's Slip Op. at 1. Specifically, Mr. Blair failed to stop after Officer Austin activated the emergency equipment in violation of Maryland Code (1986, 2012 Repl. Vol., 2019 Supp.), Transportation § 21-904. Alone, this would tend to lean against the reasonableness of using force. However, while traffic violations are not particularly serious when compared to violent crime, we are cognizant that this factor is not dispositive.

24

Finally, considering that Officer Austin testified that (1) he did not carry a taser; (2) a baton would have been ineffective against Mr. Blair's size and speed; and (3) using mace was not feasible because it would have contaminated himself at such a close range, the Estate failed to produce evidence showing that the officer's split-second decision was "so deficient that no reasonable officer could have made the same choice." *Roy*, 42 F.3d at 695. Viewing all of this evidence together, the totality of the circumstances justified Officer Austin's particular use of force; i.e., the officer acted within the scope of objective reasonableness as articulated by the Supreme Court. The Estate failed to introduce legally sufficient evidence to show that Officer Austin's conduct exceeded the permissible range of conduct.

2. *The Circuit Court Should Have Granted Officer Austin's Motion for Judgment.*

Judge Hotten's opinion today disregards *Garner*, *Elliott*, *Schulz, Roy* and other cases analyzing the reasonableness of deadly force. The Fourth Amendment does not permit judges or juries to "Monday morning quarterback" the decisions of a police officer facing an imminent and serious threat "because it only requires that the seizure fall within a range of objective reasonableness." *Schulz*, 44 F.3d at 649. Officer Austin had "sound reason to believe that [Mr. Blair] pose[d] a threat of serious physical harm," justifying the use of deadly force. *Elliott*, 99 F.3d at 642. Anything more—including the suggestion that Officer Austin "wait and see" if Mr. Blair is armed, or engage in hand-to-hand combat— edges dangerously close to the level of certitude "the Constitution does not require . . . precede the act of self[-]protection." *Id.* at 644. Much like we pondered in *Richardson*,

"*what was* [the officer] *to do?*"  361 Md. at 459.  Under Judge Hotten's approach, Officer

Austin was

> at that split-second moment, faced with the impossible choice of either
> defending himself and, in so doing, risking liability for any harm inflicted on
> [Mr. Blair] . . . or taking no defensive action and putting his life in immediate
> and mortal danger in order to save his pocketbook.

*Id.*  "The law cannot reasonably put officers in that situation."  *Id.*

Under the objective reasonableness standard articulated by the Supreme Court in

*Graham* and its progeny, Officer Austin acted reasonably based upon "the information that

[he] 'possessed at the time of his decision' to use such force."  *Schulz*, 44 F.3d at 648.

Because the Estate failed to produce evidence demonstrating that Officer Austin's conduct

exceeded the spectrum of objective reasonableness, the circuit court should have granted

Officer Austin's motion for judgment.  Therefore, while I would affirm the judgment of

the Court of Special Appeals, I would do so on different grounds.[13]

---

[13] Judge Hotten's disposition of this case deprives Officer Austin the ability to pursue his remaining challenges to the propriety of the trial below.  Given that four judges of this Court reverse the opinion below, the proper procedural recourse would be to remand this case to the Court of Special Appeals.  Under that result, Officer Austin would be afforded review of the remaining three issues presented below, but not reached by the Court of Special Appeals, because of its original disposition.  *See Austin*, 2019 WL 1873495, at *2 n.3 ("[Officer] Austin raises four issues, challenging that the trial court erred by (1) denying his motions for judgment; (2) denying his motion for judgment notwithstanding the verdict; (3) allowing the Estate's expert witness to give his opinion on legal conclusions; and (4) admitting irrelevant and prejudicial character evidence about Jeffrey Blair.  Because of our resolution of [Officer] Austin's first issue, we do not address his remaining issues.").  To be sure, this is the course chosen by the dissent below.  *Id.* at *9 (Berger J., dissenting) ("Because I would hold that the verdict returned by the jury should not be set aside, it is necessary to consider the other two issues raised by Austin, which relate to the admissibility of evidence.").

Judge Booth and Judge Battaglia have authorized me to state that they join in this opinion.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/35a19cn.pdf